JAMES A. GREENE, Ex'r of the Estate of Bernadine Greene, Deceased, Plaintiff-Appellant, v. DR. JAMES ROGERS *et al.*, Defendants-Appellees.

Third District No. 3—85—0257

Opinion filed October 2, 1986.

George P. Troha and Theodore J. Bednarek, both of Troha, Troha & Bednarek, of Joliet, for appellant.

Theodore J. Jarz, of McKeown, Fitzgerald, Zollner, Buck, Sangmeister, of Joliet, for appellee Silver Cross Hospital.

James Rogers, of Joliet, for appellee, *pro se.*

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This was an action brought by James A. Greene, as executor, for the wrongful death of his wife, Bernadine Greene, for medical malpractice against Silver Cross Hospital and Dr. James Rogers. The plaintiff alleged, among other things, that the hospital was negligent in not initially admitting Bernadine Greene into the coronary-care unit because of failure to diagnose her condition and by allowing her to be put through extensive physical testing when she was suffering from myocardial infarction. Further, that Dr. Rogers was also negligent by misdiagnosing her condition and prescribing certain physical activities which proximately caused her death.

The trial court awarded Silver Cross Hospital a summary judg-

ment based on the grounds that the emergency-room physician, Dr. D'Arcy, was not an agent of the hospital, and a jury returned a verdict in favor of Silver Cross Hospital and Dr. Rogers on all other counts. Plaintiff appeals the summary judgment ruling of the trial court as well as raising numerous other issues for appeal.

Bernadine Greene was a 54-year-old female who weighed approximately 220 pounds. She had a history of high blood pressure, hypertension, and diabetes. Both of her parents had died of heart problems and one of her brothers had a heart problem. Mrs. Greene was admitted to Silver Cross Hospital on February 27, 1981. She was complaining of chest pains radiating into the arm and diaphoresis (sweating) from the day before. Dr. D'Arcy, the emergency-room physician, ordered one EKG and one cardiac enzyme test and admitted her to a regular hospital ward. While in the hospital under the care of Dr. Demus, she underwent X-rays, an upper G.I. series, and other diagnostic tests. With the possibility that Mrs. Greene's pain might be of a surgical nature, Dr. Demus, the attending physician, called Dr. Rogers as a surgical consultant to make an evaluation of Mrs. Greene. Dr. Rogers' evaluation took place at 9 a.m. on March 5, 1981. Dr. Rogers dictated a consultation in which he determined that Mrs. Greene was suffering from an esophageal hiatus hernia and gall stones. Dr. Rogers at that time informed both Mr. and Mrs. Greene of a way to alleviate Mrs. Greene's pain. After a meal and with a full stomach, she was to stand up on her toes and come down hard on her heels. Dr. Rogers, however, did not tell either Mr. and Mrs. Greene to perform the activity at that time. Dr. Rogers did not see Mrs. Greene after this consultation.

Another electrocardiogram and cardiac enzyme test were performed on Mrs. Greene sometime later in the day on March 5, 1981. The tests revealed conclusively for the first time the presence of a myocardial infarction, and Mrs. Greene was transferred to the hospital coronary care unit. Mrs. Greene expired at 12:55 a.m. on March 6, 1981. The subsequent autopsy revealed that Mrs. Greene died of a myocardial rupture, but was also found to have an esophageal hiatus hernia and gall stones. The autopsy was performed by Dr. Veenbas, a pathologist employed by Silver Cross Hospital, who was later a witness for the plaintiff at trial.

At the time the myocardium ruptured, the decedent was in bed in the intensive-care unit either asleep or resting. The cardiologist treating Mrs. Greene at the time of her death was Dr. Fitzpatrick. Plaintiff deposed Dr. Fitzpatrick prior to trial but did not call Dr. Fitzpatrick as a witness at trial. Dr. Fitzpatrick was called as a witness by the

defendant hospital and testified that the physical activity exerted by Mrs. Greene in the hospital prior to her death was not responsible for her death. The doctor further testified that had the decedent been brought to the intensive-care unit earlier, the result would have been the same. Appellant asserts on appeal that Dr. Fitzpatrick violated the doctor-patient privilege by talking to the attorneys for the defendants and that the doctor was an undisclosed expert for the defendants.

Plaintiff, at the close of the evidence, submitted Illinois Pattern Jury Instruction, Civil, No. 15.01 (2d ed. 1971) (hereinafter IPI Civil 2d) the long-form instruction for proximate cause, which states:

"When I use the expression proximate cause I mean any cause which in natural or probable sequence produced the injury complained of. It may not be the only cause nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time which in combination with it caused the injury."

The court, however, gave the following defendants' instruction over plaintiff's objection:

"When I use the expression proximate cause I mean any cause which in natural or probable sequence produced the injury complained of."

Appellant now alleges that the trial court's instruction was in error. Further, appellant offered the following issues instruction:

"The plaintiff further claims that one or more of the foregoing was a proximate cause of denying Bernadine Greene a chance of survival."

The court, however, refused to give plaintiff's issues instruction and gave the following proximate cause paragraph:

"The plaintiff further claims that one or more of the foregoing was a proximate cause of Bernadine Greene's death."

The jury returned a verdict in favor of the defendants. Plaintiff then made a post-trial motion for a new trial on the grounds that the attorneys for the hospital agreed to act as the attorneys for an out-of-State witness and that they advised the witness not to testify in an out-of-State evidence deposition. The trial court denied the motion.

Appellant raises six issues on appeal: (1) whether the trial court improperly granted summary judgment in favor of the hospital concerning Dr. D'Arcy's emergency-room treatment; (2) whether the trial court improperly refused the testimony of plaintiff's witness Dr. Veenbas; (3) whether the trial court improperly allowed the testimony of Dr. Fitzpatrick; (4) whether the trial court erred in not allowing the

plaintiff's proximate-cause instruction; (5) whether the trial court erred in not allowing the plaintiff's issue instruction regarding proximate cause; and (6) whether the trial court erred in refusing the plaintiff's post-trial motion for a new trial.

As to issue (1), we are of the opinion that the trial court properly issued summary judgment in favor of the hospital. Appellant asserts that the emergency-room physician, Dr. D'Arcy, was an agent of the hospital, either by express agency, apparent agency or by estoppel and, therefore, the hospital is vicariously liable under the doctrine of respondeat superior. Our review of the law indicates otherwise.

A motion for summary judgment should be granted if the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) It is a remedy to be awarded only if the movant can show a right that is clear and free from doubt. (*Smith v. St. Therese Hospital* (1982), 106 Ill. App. 3d 268, 435 N.E.2d 939.) A triable issue precluding summary judgment exists where there is a dispute as to material facts, or where, the material facts being undisputed, reasonable persons might draw different inferences from the facts. *Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 240 N.E.2d 699.

Dr. D'Arcy was an employee of Scott Emergency Medical Services, Ltd., being under contract with Silver Cross Hospital to provide emergency-physician services. Appellant asserts that the hospital bylaws, policies and procedures maintain sufficient control over the emergency-room physicians so that the physicians are agents of the hospital. Further, that the emergency-room physicians used hospital equipment, wore hospital gowns, and received their pay directly from the hospital.

In tort actions, vicarious liability of the principal for the actions of the agent generally rest in the theory of respondeat superior. In order to establish liability under this theory, two elements must exist. First, there must be a master-servant relationship and, second, the activity of the agent must be within the scope of the employment. Clearly the second requirement will be satisfied in this case if a master-servant relationship is found to exist between Dr. D'Arcy and Silver Cross Hospital.

Two dominant factors in determining if one is an agent or independent contractor are control retained by the principal and the method of payment. Generally, a decision to treat a patient in a particular manner is one entirely within the discretion of the treating

physician, and the negligence of the treating physician in the treatment of the patient cannot be imputed to the hospital unless the physician is an agent of the hospital. *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198; *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877.

We are of the opinion that the segments of the hospital policy and procedures with regard to emergency-room physicians do not establish that the hospital had control over the initial treatment of patients by an emergency-room physician so as to impute an agency relationship. Undeniably, the hospital had some control over the emergency room. We do not believe, however, that the hospital's ability to control admission, discharge, and referral of patients in the emergency room constitutes control over the physician's treatment based on the physician's diagnosis of the patient. The policies referred to by appellant are basically policies and procedures that are prescribed by law (Ill. Rev. Stat. 1985, ch. 111½, par. 142 *et seq.*) and the regulations of the Illinois Department of Public Health. Section 3–2 of the rules and regulations of the Department of Public Health states that "the physician shall be responsible for all aspects of general medical care." The control of the quality of care provided in the emergency room is provided by the medical staff pursuant to section 3–1.1. Once organized, one of the required functions of the medical staff as a body is to determine the qualifications and privileges to be extended and maintained by physicians with privileges to utilize the hospital. This peer-review process is a function of the physicians serving on various committees in reviewing the care provided in the facility. Since it is a review process, there are no means by which the medical staff, let alone the hospital administration, can control the initial treatment and diagnosis of a patient in the emergency room. The absence of the power to control the decision making of the emergency-room physicians demands that the independent relationship between hospital and emergency-room physician be recognized. This is not to say that a hospital could not be liable for its own negligence in instances where it knowingly allows an incompetent physician to practice within its facility. Clearly it could be liable for such negligence, but that is not the situation presented in this case.

■ Similarly, the hospital pays $30,000 monthly to Scott Emergency Medical Services, Ltd., for the services of the emergency-room physicians. This guaranteed payment is fixed without regard to the individual charges for physician's fees which are ultimately approved by the hospital administrator and actually determine the overall earnings of the emergency-room physicians. Courts have previously looked at

whether the hospital pays the physician for services provided the patient for determining an agency relationship. (*Garfield Park Community Hospital v. Vitacco* (1975), 27 Ill. App. 3d 741, 327 N.E.2d 408.) There is no question in this case that the hospital did not directly pay Dr. D'Arcy for the services he performed. We find no express-agency relationship between Dr. D'Arcy and Silver Cross Hospital.

The doctrine of apparent agency is generally thought of as a contract theory of recovery. Other State courts, however, have carved an apparent-agency (also known as ostensible agency) exception in tort actions for medical malpractice. (See *Hardy v. Brantley* (Miss. 1985), 471 So. 2d 358; *Williams v. St. Clair Medical Center* (Ky. App. 1983), 657 S.W. 2d 590; *Hannola v. City of Lakewood* (1980), 68 Ohio App. 2d 61, 426 N.E.2d 1187; *Adamski v. Tacoma General Hospital* (1978), 20 Wash. App. 98, 579 P.2d 970.) Illinois courts have yet to recognize the exception and will not do so in this case.

Appellant argues that there are disputed facts concerning whether or not Dr. D'Arcy had the apparent authority to act on behalf of the hospital and that a jury should have been allowed to decide the issue. Such facts include: (1) that emergency-room physicians such as Dr. D'Arcy regularly wear garments that have Silver Cross Hospital insignia on them while on duty; (2) that the consent forms signed by patients before treatment do not indicate that the emergency-room physicians are employed by Scott Emergency Medical Services, Ltd., not Silver Cross Hospital; (3) that all the equipment and staff were the property of or employed by Silver Cross Hospital; and (4) that Silver Cross Hospital did nothing to inform the public that the emergency-room physicians were not employees of the hospital.

▮ Except for the consent forms, all of the above facts cited by the appellant are not disputed by the appellee hospital. The only dispute that the hospital has to the consent form is that the appellant misquoted the form in his brief. This is not the type of dispute that need be resolved by a jury. Therefore, a court need only apply the law to the undisputed facts before it. Since Illinois does not recognize the apparent-agency theory of recovery in medical-malpractice actions, the trial court was correct in granting appellee's motion for summary judgment.

▮ The doctrine of estoppel requires that the injured party rely to his detriment on the representations made by the parties sought to be estopped. *Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, 309 N.E.2d 632; *Slavis v. Slavis* (1973), 12 Ill. App. 3d 467, 299 N.E.2d 413.

▮ In the present case, it appears that any representations that

were relied upon by Bernadine Greene were made by Dr. Demus, not by Silver Cross Hospital. It was Dr. Demus who referred the Greenes to Silver Cross Hospital. Moreover, appellant cannot base reliance upon the gown worn by Dr. D'Arcy because the record does not show that Dr. D'Arcy was wearing a Silver Cross Hospital gown when he attended to the decedent, merely that he may have been wearing one. Appellant's argument that the Greenes relied on the consent form to their detriment is unpersuasive. Mr. Greene signed the form. There is no indication that Mrs. Greene ever saw the form, let alone relied on it. In no way has it been shown that either Mr. or Mrs. Greene in any way changed their position to their detriment based upon representations made by Silver Cross Hospital regardless of whether Dr. D'Arcy was an agent of the hospital or not. The doctrine of estoppel does not apply to this case.

Issue (2) regards appellant's assertion that the trial court improperly disallowed the testimony of Dr. Veenbas. Appellant called Dr. Veenbas, the pathologist, to testify about his findings in the autopsy of Mrs. Greene. Appellant further wished to question him concerning whether or not the perforation might have been avoided had Mrs. Greene been admitted to the coronary-care unit of the hospital on February 27, 1981, until the time of her death on March 6, 1981. The hospital objected on the grounds that Mrs. Greene's admission into the hospital was not in question because of the summary judgment granted in favor of the hospital and on the grounds that Dr. Veenbas had not been disclosed as an expert as required by Supreme Court Rule 220 (87 Ill. 2d R. 220). The trial court refused to allow the testimony of Dr. Veenbas, relying on Supreme Court Rule 220.

■■ We are of the opinion that the offer-of-proof testimony of Dr. Veenbas regarding whether Mrs. Greene would have been "better served" in the coronary-care unit would be based upon his expertise and thus an expert opinion of which disclosure was required. Dr. Veenbas' factual involvement in the case was limited to performing the autopsy. The record is void of any indication that Dr. Veenbas ever had any involvement in emergency-room or intensive-care-room treatment at Silver Cross Hospital. Further, he had no involvement in the emergency-room treatment of Mrs. Greene and cannot testify to such care as a mere factual witness because he lacked actual knowledge. Although appellant couched the wording of the questions proffered to Dr. Veenbas in such a manner as to avoid testimony concerning the relevant standard of care owed by the hospital, the gist of the offer of proof related to how Mrs. Greene could have been "better served." He was posed with a hypothetical situation and asked if in-

tensive care would have been the proper placement for a patient with those symptoms. This constituted expert-opinion testimony and appellant was required to disclose such testimony prior to trial in accordance with Supreme Court Rule 220 (87 Ill. 2d R. 220).

Appellant further asserts (issue 3) that the testimony of Dr. Fitzpatrick was improperly allowed by the trial court and constitutes reversible error. Appellant cites two reasons for his assertion. First, that Dr. Fitzpatrick committed a breach of confidentiality by testifying on behalf of the defendants, and, second, that the appellees did not disclose Dr. Fitzpatrick as an expert as required by Supreme Court Rule 220.

■ As to appellant's first assertion, we are of the opinion that Dr. Fitzpatrick did not commit a breach of confidentiality by testifying on behalf of the appellees. The Illinois Code of Civil Procedure, section 8—802, provides that no physician shall be permitted to disclose any information he or she may have acquired in attending a patient in a professional character, necessary to enable him or her professionally to serve such patient, except, among other instances, "in all actions brought by or against the patient, *** (or) *** his or her personal representative." (Ill. Rev. Stat. 1985, ch. 110, par. 8—802.) See also *Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139, 437 N.E.2d 376 (where this court allowed the testimony of the treating physician on behalf of the defendants over the plaintiff's objection).

Appellant's second assertion is more problematic than the first. As stated earlier, Supreme Court Rule 220 requires that any expert witness that either party contemplates having testify at trial must be disclosed by that party prior to trial so as to insure fair and equitable trial preparation. Failure to disclose an expert will result in disqualification of the expert testimony. (87 Ill. 2d R. 220.) Appellees did not disclose Dr. Fitzpatrick as an expert witness prior to trial. We are of the opinion, however, that disclosure of Dr. Fitzpatrick as an expert witness was either not necessary or constituted harmless error by the trial court.

■ The trial court is granted broad discretion concerning the admission of evidence and its decision will not be disturbed on appeal unless that discretion is clearly abused. (*In re Estate of Weir* (1983), 120 Ill. App. 3d 18, 458 N.E.2d 134; *Trippel v. Lott* (1974), 19 Ill. App. 3d 936, 312 N.E.2d 369.) Hence, in the present situation the trial court should be given broad discretion regarding whether Dr. Fitzpatrick should have been classified as an expert witness. The record indicates that Dr. Fitzpatrick was the coronary-care-unit physician for Bernadine Greene. His testimony at trial related to his care of

Mrs. Greene or about operations within the coronary-care unit itself. These are factual matters of which Dr. Fitzpatrick had personal knowledge; they were not matters to which Dr. Fitzpatrick was giving an opinion as to a standard of care to be followed. (*Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711; *Sheahan v. Dexter* (1985), 136 Ill. App. 3d 241, 483 N.E.2d 402.) Appellant asserts, however, that Dr. Fitzpatrick's testimony was a surprise because the doctor had supported appellant's theory of the case at deposition. This argument does not support a reversal because the appellant had and used the opportunity to cross-examine Dr. Fitzpatrick and impeach his credibility by use of his prior inconsistent statements at the deposition. Therefore, appellant's use of *Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 459 N.E.2d 940, as authority for the proposition that Dr. Fitzpatrick's testimony should have been excluded, although relevant, does not necessarily support appellant's position. In *Ashford*, the court was deciding whether a witness not disclosed by interrogatory in a paternity suit can be excluded from testifying at trial. The court considered many factors including: the surprise to the other party, the prejudicial effect of the testimony, the nature of the testimony, the diligence of the adverse party, the good faith of the adverse party, and the timely objection to the testimony. The court then quoted its prior decision in *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 464, 389 N.E.2d 565, for the appropriate standard of review as follows: "Only a clear abuse of discretion or an application of impermissible legal criteria *** justifies a reversal of the trial court. (*Yamamoto v. Omiya* (9th Cir. 1977), 564 F.2d 1319, 1325; *Carey v. Greyhound Bus Co.* (5th Cir. 1974), 500 F.2d 1372, 1380." (*Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 459 N.E.2d 940, 948, quoting *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565.) The trial court did not clearly abuse its discretion in this case so as to require reversal on appeal.

Even if the trial court erred in not excluding Dr. Fitzpatrick as the appellee's expert witness because of nondisclosure, the error was harmless in light of the effect it had on the outcome of the case.

■■ Generally, a reviewing court will not reverse a jury verdict because of error in the admission of evidence unless there has been a denial of real justice. (*Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 484 N.E.2d 365; see also *People v. West* (1981), 102 Ill. App. 3d 50, 429 N.E.2d 599.) " 'It is not every error, of course, that will require a reversal. Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment or decree will not be disturbed. [Citations.]' (31 Ill. 2d 511, 514.)'' (*J. L. Sim-*

*mons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 115, 483 N.E.2d 273.) The burden is on the party seeking reversal to establish prejudice. *Goldstein v. Scott* (1982), 108 Ill. App. 3d 867, 439 N.E.2d 1039.

Appellant in this case has not convincingly established that the decision of the trial judge to allow Dr. Fitzpatrick's testimony was prejudicial. Appellant had ample opportunity to impeach Dr. Fitzpatrick with his statements at deposition and also had an expert that testified to the contrary. We do not believe that Dr. Fitzpatrick's testimony was the deciding factor which swayed the jurors to the side of the appellees.

Appellant's next two grounds (issues 4 and 5) for reversal assert that the trial court erred in not proffering his proposed instructions. Again, the *Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711, decision cited earlier is on point. In *Curry*, the plaintiff requested the long form of IPI Civil 2d No. 15.01, which the trial court rejected and instead gave the short form. The appellate court noted that it would not have been error for the trial court to use the long form, but the test for determining the propriety of the submitted instructions is whether, taken as a whole, they are sufficiently clear so as to not mislead the jury and whether they fairly and accurately state the law. (See also *Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 449 N.E.2d 211.) The other instructions given by the trial court make it clear that both appellees could be found to be the proximate cause of the injury claimed by the appellant. For example, one jury instruction reads as follows: "If you find that the plaintiff is entitled to recover against both defendants, you may not allocate the damages between them, but you must return a verdict in one, single sum against both defendants." Other given instructions also quite clearly indicate that the jury could find both defendants to be the proximate cause of the injury claimed by appellant. Further, the proximate-cause instruction states that "any" cause may produce the injury complained of. Although the long form may have been preferable, the instructions taken as a whole were proper. *Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711; *Perry v. Chicago & North Western Transportation Co.* (1977), 54 Ill. App. 3d 82, 369 N.E.2d 155.

Appellant also requested that his issue instruction be given which stated that "one or more of the foregoing was a proximate cause of denying Bernadine Greene a chance of survival." The trial court refused to give that instruction and gave an instruction stating that "one or more of the foregoing was a proximate cause of Bernadine Greene's death."

■■ To state a cause of action for medical malpractice, the plaintiff must establish a duty owed by the defendant and a breach thereof proximately causing injury to the plaintiff. (*Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711; *Nichelson v. Curtis* (1983), 117 Ill. App. 3d 100, 452 N.E.2d 883.) To meet this burden, the plaintiff must show that the act of the defendant more probably than not caused the injury. *Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711; *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.

Allowing appellant's instruction would have misled the jury. Although the failure of the appellees to diagnose the myocardiam of Bernadine Greene in the first few days of her stay at the hospital may have decreased her chance of survival, the appellant failed to show that Mrs. Greene would have more probably than not survived had the myocardiam been detected initially upon admission to the hospital. Appellant's proposed instruction states that the appellees more probably than not decreased her chance for survival. But the chance for survival had the myocardiam been detected is unknown. The record supports the notion that Mrs. Greene's chance for survival would have been less than 50% regardless of early detection by the appellees. "Without showing that the decedent had a better than even chance of survival, the plaintiff could not prove the defendants' negligence more likely than not caused the decedent's death." (*Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711.) The injury complained of in this case is the death of Mrs. Greene; it is not one of injury for denying her a chance of survival.

■■ Additionally, the appellant's theory of recovery as to loss of a chance of survival was not raised in the complaint. Appellant alleged in his second amended complaint that the acts of the appellees were the proximate cause of Mrs. Greene's death, a different theory of recovery than that proposed in appellant's jury instruction. Appellant cannot state one cause of action in the complaint and then attempt to prove another cause of action. (*Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711; see also *Burroughs v. Mefford* (1944), 387 Ill. 461, 56 N.E.2d 845.) Proof without pleadings is as defective as pleadings without proof. (*Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711; *Department of Transportation v. Rasmussen* (1982), 108 Ill. App. 3d 615, 439 N.E.2d 48.) The trial court issued an instruction that conformed to the cause of action pleaded by the appellant in his complaint. Where the trial court has failed to give a proffered instruction, reversal is possible only where it is clear that the party tendering the instruction was denied a fair trial. *Hitt v.*

*Langel* (1968), 93 Ill. App. 2d 386, 236 N.E.2d 118.

██ Appellant lastly asserts (issue 6) that the trial court erred in denying appellant's motion for a new trial on the grounds that the hospital had represented a witness who refused to testify in an out-of-State evidence deposition. We affirm the decision of the trial court.

Charlene Howard was a former nurse of Silver Cross Hospital. Appellant sent notice to the appellees that her evidence deposition would be taken two days before trial. Appellant now asserts that the appellee hospital advised Charlene Howard not to testify and that the hospital did not make its identity as her representative known until after commencement of the trial.

It is common knowledge that a non-party witness may insist upon a subpoena before testifying at trial. Charlene Howard had the right to compel appellant to subpoena her testimony. Why appellant did not subpoena her is unknown. Further, the Western Union telegram sent by Charlene to appellant's attorneys stating that she is represented by the attorneys for the hospital and will not testify without a subpoena was dated December 7, 1984, one day before the scheduled deposition. It is our opinion that the hospital should have subpoenaed Charlene Howard if she so required regardless of who represented her. Further, there is no indication in the record that her testimony would have been helpful to the appellant's case. Certainly, we cannot grant a new trial on these grounds.

Several motions were taken with the case. Appellant moved to strike appellee Rogers' brief and argument on the grounds that the brief does not meet the requirements of Supreme Court Rule 341 (87 Ill. 2d R. 341). This court has considered and denies the motion because this court has disregarded any objectionable comments contained in appellee Rogers' brief and argument. Appellant further motioned for leave to submit additional authority. This motion is hereby allowed and the additional authority cited has been examined and considered by this court. Lastly, appellee Rogers filed a motion to dismiss himself from the action. The motion is denied.

The decision of the trial court is affirmed.

Affirmed.

HEIPLE and WOMBACHER, JJ., concur.