GERIK RAGLIN, a Minor, by Jasper Raglin *et al.*, his Parents and Next Friends, *et al.*, Plaintiffs-Appellants, v. H M O ILLINOIS, INC., *et al.*, Defendants-Appellants (Pronger-Smith Medical Associates *et al.*, Defendants).

First District (5th Division)   No. 1—91—2775

Opinion filed June 5, 1992.

Power, Rogers & Lavin, of Chicago (Larry R. Rogers, of counsel), for appellants.

G. Christian Kronberg and Terri Abruzzo, both of Kirkland & Ellis, of Chicago (Carolyn Clift, of Health Care Service Corporation, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiffs appeal from the grant of summary judgment in favor of Health Care Service Corporation (HCSC) and H M O Illinois, Inc. (HMOI).[1] The issue before this court is whether HCSC and HMOI may be held vicariously liable for the negligence of doctors under contract with them to provide medical services to the members of their health care plan.

The facts of this case are as follows.

Gwendolyn Raglin (Raglin) became a member of HMOI through her employment and in June 1985, because of her membership in HMOI, became a patient of Pronger-Smith Medical Associates (Pronger-Smith), a medical group under contract with HMOI to provide medical services to HMOI members. A medical history taken in November 1985 revealed that Raglin had diabetes in her family history.

In April 1986 a pregnancy test confirmed that Raglin was pregnant, and Pronger-Smith physicians Alfonso Mejia, Mario Irigoyen and Jose I. Manglano provided Raglin with medical care throughout

---

[1]According to the record, HCSC is a mutual legal reserve corporation doing business as Blue Cross and Blue Shield of Illinois (BC/BSI). BC/BSI is a member of the Blue Cross and Blue Shield Association, which is the trade mark corporation that administers the licensing of the "Blue Cross" and "Blue Shield" registered trademarks. HMOI is a health maintenance organization which is a wholly owned subsidiary of HCSC. HMOI is what is known in the industry as an "Independent Practice Association" or "IPA model" health maintenance organization, as opposed to a "staff model" health maintenance organization. This means that HMOI is an entity which arranges and pays for health care for its members by contracting with independent medical groups or physicians, rather than providing health care through its own salaried physicians. There is no entity known as "Health Assurance Plan." It is the trade name for a health care plan offered by HMOI.

her pregnancy. Although these doctors were aware of Raglin's medical history, which presented a strong likelihood that Raglin could develop diabetes during pregnancy, which in turn could lead to a larger than normal birth size baby, tests to monitor Raglin's blood sugar were not performed.

On November 16, 1986, Raglin delivered a son, Gerik Raglin (Gerik). The delivery was complicated by a condition known as shoulder dystocia. Apparently this means that, because of its size, the baby's shoulders become lodged in the birth canal and caused delivery to be arrested. In response to this situation, Dr. Mejia applied pressure to Raglin's abdomen and used forceps to assist the delivery. Because of this forced delivery, Gerik sustained permanent damage to his brachial plexis nerve resulting in paralysis.

On November 15, 1988, a medical malpractice action was filed against all of the above-named defendants for the alleged negligent medical care provided to Raglin during her pregnancy and for the negligent prenatal care and delivery of her son, Gerik. On March 10, 1989, HCSC and HMOI filed a motion to dismiss the complaint with prejudice for failure to state a cause of action against them. This motion was resubmitted on January 5, 1990, as a motion for summary judgment. On February 22, 1990, the trial court granted HCSC and HMOI summary judgment in their favor. Plaintiffs now appeal from that order.[2]

The only issue before this court is whether the trial court erred by granting HCSC and HMOI summary judgment in their favor. Summary judgment is a drastic measure which should only be taken when the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and plaintiffs are entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) A triable issue exists where there is a dispute as to material facts or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts. *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 498 N.E.2d 867.

---

[2]It should be noted that plaintiffs filed a notice of appeal on March 19, 1990, which was later dismissed by this court because the order appealed from was not final and the court lacked jurisdiction. (See *Raglin v. H M O Illinois, Inc.* (1991), 217 Ill. App. 3d 1076, 578 N.E.2d 108.) Subsequently, plaintiffs petitioned the trial court for a written finding that there was no just reason to delay enforcement or appeal of the February 22, 1990, order granting HCSC and HMOI summary judgment. The petition was granted on July 25, 1991, and Rule 304(a) language was added to the summary judgment order. A new notice of appeal was filed on August 21, 1991, and it is from this appeal that the court now proceeds.

On appeal plaintiffs contend that summary judgment was improperly granted because a material issue of fact exists on the question of whether a principal-agency relationship, either actual or apparent, exists between HMOI and the doctors who deliver medical care to HMOI members. Defendants, however, contend that the trial court ruled properly, finding that no agency relationship exists, as a matter of law, so that they were entitled to judgment in their favor. For reasons that follow, we affirm the judgment of the trial court.

▪ Initially we note that plaintiffs devote much of their argument in their appellate brief to the issue of whether HMOI is a "provider" of health care within the meaning of the Health Maintenance Organization Act (H M O Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 1402(12)). The thrust of their argument seems to be that if HMOs may be deemed "providers" of health care, then they are not immune from liability for malpractice. However, we believe this argument is misdirected since there appears to be no question that HMOs are not immune from liability. (See *Moshe v. Anchor Organization for Health Maintenance* (1990), 199 Ill. App. 3d 585, 557 N.E.2d 451; *American National Bank & Trust Co. v. Anchor Organization for Health Maintenance* (1991), 210 Ill. App. 3d 418, 569 N.E.2d 128.) Nor do defendants here contend that they are immune from the potential of malpractice liability. However, a lack of immunity from prosecution for malpractice does not mean *a fortiori* that HMOs may be held strictly liable for any injury that might occur to one of their medical care plan subscribers during the course of medical treatment. Some recognized legal theory must be the basis for holding an HMO liable for medical malpractice.

▪ A review of case law reveals that there have been few malpractice actions wherein HMOs have been named as defendants. However, we are unaware of any case in which an HMO has actually been held liable for medical malpractice. Nevertheless, it has been observed that a potential exists for HMOs to be held liable for medical malpractice based on one or more of several tort theories: (1) vicarious liability on the basis of *respondeat superior* or ostensible agency; (2) corporate negligence based upon negligent selection and negligent control of the physician; and (3) corporate negligence based upon the corporation's independent acts of negligence, *e.g.*, in the management of utilization control systems. Contract law might also be utilized to hold HMOs liable for malpractice based on breach of contract or breach of warranty. See Oakley and Kelley, *H M O Liability for Malpractice of Member Physicians: The Case of IPA Model H M Os*, 23 Tort & Ins. L.J. 624, 626 (1988).

In the present case, plaintiffs have not alleged any negligent acts on the part of the HMO itself nor have they alleged any breach of contract. Therefore, the only manner in which HMOI might be held liable for medical malpractice in this case is if it could be found vicariously liable for the negligent acts of a servant or agent, on the basis of *respondeat superior* or ostensible agency. Therefore, the real issue is whether, under the facts in this case, there exists any basis upon which to hold HMOI, and thus its parent corporation HCSC, vicariously liable for the negligence of the doctors who were under contract with HMOI to deliver health care services to HMOI members. This issue turns on the question of whether plaintiffs were able to show the necessary nexus between HMOI and the doctors charged with negligence.

■ ■ In order to establish liability under the doctrine of *respondeat superior*, one must show that a master-servant relationship existed between the parties and that the allegedly negligent activity was within the scope of employment. (*Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 498 N.E.2d 867.) In this case there seems to be no question that HMOI is an IPA model health maintenance organization and, therefore, does not directly employ its own physicians. Instead, HMOI contracts with independent medical groups, who employ private physicians who maintain their own offices. Consequently, no direct master-servant relationship exists between HMOI and the physicians. For this reason the medical groups, and thus the physicians who work within the medical group, may be considered independent contractors with respect to HMOI and the doctrine of *respondeat superior* would normally not apply.

■ However, we must consider whether there is a factual issue on the question of whether an agency relationship may be inferred, despite the legal relationship that exists between HMOI and the physicians. There are two avenues by which one may attempt to create a fact question on the issue of the liability of HMOI: (1) by a showing of implied authority, *i.e.*, that the facts and circumstances indicate that HMOI actually exerted sufficient control over the physicians to negate the independent contractor status, at least with respect to third parties (see *Johnson v. Sumner* (1987), 160 Ill. App. 3d 173, 513 N.E.2d 149; *Mateyka v. Schroeder* (1987), 152 Ill. App. 3d 854, 504 N.E.2d 1289 (implied authority is actual authority circumstantially proved by facts and circumstances)), or (2) by a showing of apparent authority, *i.e.*, that HMOI, by its actions or statements, led a third party, who may have been unaware of the independent contractor relationship, to believe that the physicians were controlled by HMOI. See *Weil, Frei-*

*burg & Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 577 N.E.2d 1344.

The practice of extending liability beyond the normally limited legal relationship has already been legitimized in the hospital context. Courts of law have opened the possibility that hospitals might incur liability for the negligence of physicians, despite the fact that an independent contractor relationship may have existed between the hospital and the physician. (See *Uhr v. Lutheran General Hospital* (1992), 226 Ill. App. 3d 236, 589 N.E.2d 723; *Sztorc v. Northwest Hospital* (1986), 146 Ill. App. 3d 275, 496 N.E.2d 1200; *Gasbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 406 N.E.2d 544.) In these cases, however, the courts have followed well-settled principals of law and held that a question of law existed as to the issue of apparent or ostensible authority only upon a showing of equitable estoppel. Consequently, in such cases plaintiffs have the burden of showing detrimental reliance.

Although the apparent authority theory has been utilized to hold a hospital vicariously liable for the actions of a doctor, the theory of apparent authority has not yet been utilized in Illinois in the context of an HMO. It has, however, been employed in other jurisdictions. See *Kohn v. Delaware Valley H M O, Inc.* (E.D. Pa. 1991), No. 91—2745 (filed December 20, 1991); *Independence H M O, Inc. v. Smith* (E.D. Pa. 1990), 733 F. Supp. 983 (claim that HMO was vicariously liable for the negligence of the independent contractor physicians who serviced the HMO based upon an ostensible agency theory not preempted by the Employee Retirement Income Security Act (29 U.S.C. §1001 *et seq.* (1988)) (ERISA)); *Chase v. Independent Practice Association, Inc.* (1991), 31 Mass. App. 661, 583 N.E.2d 251; *Boyd v. Albert Einstein Medical Center* (1988), 377 Pa. Super. 609, 547 A. 2d 1229.

We should also note that, in *Boyd,* the reviewing court reversed a grant of summary judgment to the HMO, finding that a question of material fact existed as to whether the participating physicians were ostensible agents of the HMO. The *Boyd* court found an exception to the rule that an employer is not liable for the torts of an independent contractor, based upon section 429 of the Restatement (Second) of Torts (1965), which states:

"One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence in supplying such services, to the same extent as

though the employer were supplying them himself or by his servants."

In reaching its decision, however, the *Boyd* court relied, to a large extent, on the fact that the HMO, Health Maintenance Organization of Pennsylvania (HMO-PA), although an IPA model HMO, advertised itself in a brochure as a "total care program which not only insures its subscribers, but provides medical care, guarantees the quality of the care and controls the costs of health care services." The brochure also indicated that HMO-PA was "an entire health care system"; "provides the physicians, hospitals and other health care professionals needed to maintain good health" and "assumes the responsibility for quality and accessibility." The court seemed to find that the advertising constituted a "holding out," or a representation from which one could reasonably conclude that the physicians within the HMO's health care delivery system were its employees.

In *Chase*, however, the reviewing court affirmed the trial court's grant of summary judgment to the HMO. Based upon the facts in *Chase*, which are surprisingly similar to the facts in the case at bar, the court found that the affidavits and contract documents did not demonstrate, as a matter of law, that the HMO controlled or retained the right to control the professional activities of the alleged negligent doctor. Also, the court held that there was no showing of detrimental reliance, *i.e.*, the plaintiff failed to show that she reasonably relied upon representations made by the HMO which caused her to conclude that either the doctor or the medical group were the HMO's agents or employees. Therefore, the ostensible agency theory was inapplicable.

We find that the reasoning and conclusions reached by the court in *Chase* are equally applicable to the case at bar. In this case plaintiffs attempted to show that HMOI controlled, or retained the right to control, the medical groups and physicians with whom it contracted by virtue of the quality assessment and utilization review guidelines it promulgated in accordance with the HMO Act. (See Ill. Rev. Stat. 1989, ch. 111½, par. 1403(c)(16).) However, it is clear to this court that the Quality Assurance Compliance Program, with which medical groups and physicians contracting with HMOI must abide, is not the type of control from which agency arises.

The quality assessment program is really just a manner of tracking the independent medical groups to determine if they are complying with the rules and regulations of HMOI. Essentially, the independent medical groups and their physicians are required to provide documentation that they are following procedures designed to assure quality health care. HMOI, however, does not review the contents of

the documentation to assess the accuracy of the medical diagnoses or opinions, nor does it assume any responsibility for determining the correctness or appropriateness of the physician's medical services delivered. HMOI plays only an administrative role, overseeing the process of health care delivery. Therefore, this court finds that, as a matter of law, this does not constitute the type of control necessary to impute an agency relationship between HMOI and the physicians.

Nor do we see any basis for finding that HMOI advertised or held itself out as exerting control over its physicians so that one might reasonably conclude that the physicians were the employees of HMOI. In fact, the subscriber certificate issued to Raglin upon joining HMOI specifically informed her that HMOI did not directly furnish medical care and could not make medical judgments.

Furthermore, there is absolutely no evidence that Raglin detrimentally relied upon HMOI for the quality of the care she received from the physicians. Raglin's affidavit stated that it was her belief that the medical care provided to her "was given as a result of, and because of, [her] membership in [HMOI]." While this is undoubtedly the case, it does not indicate detrimental reliance.

Furthermore, even if we were to assume that Raglin presented evidence that she relied on HMOI, Raglin provided no rational basis for doing so. Raglin pointed to no representations made by HMOI that led her to such reliance. Although it is true that HMOI provided Raglin with a limited list of medical groups and/or physicians who were under contract with HMOI to provide medical services to HMOI subscribers and Raglin was required to select a physician from this list, this is the manner in which all HMOs operate. Therefore, this should not be the dispositive factor upon which the question of apparent agency turns.

Because we find that the trial court properly determined that no issue of material fact exists as to the question of an agency relationship between HMOI and the defendant-doctors, we affirm the grant of summary judgment.

Affirmed.

LORENZ and GORDON, JJ., concur.