**Dawn KEARNEY, Administratrix of the Estate of Kevin Michael Kearney, Deceased and Dawn Kearney, In Her Own Right, Plaintiffs,**

v.

**U.S. HEALTHCARE, INC., Defendant.**

Civ. A. No. 94–2625.

United States District Court, E.D. Pennsylvania.

Aug. 3, 1994.

---

**1.** None of the parties here has raised the issue of the constitutionality of the Act.

Michael T. McDonnell, Jr., Drexel Hill, PA, for plaintiff.

Kathleen D. Foley, Philadelphia, PA, for defendant.

## MEMORANDUM

WALDMAN, District Judge.

### I. BACKGROUND

Plaintiff initiated this action in the Court of Common Pleas of Delaware County by summons on March 3, 1992. Defendant removed the action to this court where on June 2, 1992 the Honorable Clarence Newcomer remanded it to state court.

Plaintiff did not file a complaint in the Common Pleas Court until March 28, 1994. In that complaint, plaintiff asserts wrongful death and survival claims against defendant for negligence, misrepresentation and breach of contract, and for the malpractice of a physician in failing properly to diagnose and treat the decedent for which defendant allegedly is vicariously liable.[1]

Defendant again removed the case to this court pursuant to 28 U.S.C. § 1441(b) on the ground that plaintiff's claims arise under and are preempted by ERISA. Presently before the court is defendant's motion to dismiss for failure to state a cognizable claim.

---

1. Plaintiff's complaint includes a reference to a separate malpractice action against the treating physician filed in the Common Pleas Court of Delaware County but no information about the course or posture of that litigation is provided.

## II. LEGAL STANDARD

 The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). In deciding a motion to dismiss for failure to state a claim, the court must "accept as true all the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." *Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). Dismissal is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Robb v. Philadelphia,* 733 F.2d 286, 290 (3d Cir.1984). A complaint may be dismissed when the facts pled and the reasonable inferences therefrom are legally insufficient to support the relief sought. *Pennsylvania ex. rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 179 (3d Cir.1988).

## III. FACTS

The pertinent facts as alleged by and taken in a light most favorable to plaintiff are as follow.

The decedent was employed by Scott Paper Company where he was a participant in Scott's prepaid comprehensive health care benefits plan. The plan was operated by defendant U.S. Healthcare, a health maintenance organization or HMO.

The decedent selected Dr. Michael Stulpin as his primary care physician from a list of physicians with whom defendant contracted. Defendant "represented to their members" that it had designated "peculiarly competent primary physicians." Dr. Stulpin in fact was "minimally qualified."

Defendant agreed to provide plan beneficiaries with specialized care as needed. Defendant in fact limited or discouraged the use of specialists, hospitalization and state of the art diagnostic procedures.

The decedent saw Dr. Stulpin on March 4, 1990 and March 22, 1990 at which times he failed properly to diagnose decedent's condition or refer him to a specially equipped hospital for specialized treatment. On March 22, 1990, decedent died of thrombotic thrombocytopenic purpura.

Plaintiff asserts that defendant is liable for misrepresenting Dr. Stulpin's competence and for breaching its promise to provide specialized care.

Plaintiff also asserts that defendant is liable for Dr. Stulpin's alleged malpractice because it was negligent in approving or designating him and "in failing to control and supervise the conduct of Michael Stulpin, M.D. which it had the right to control." Plaintiff contends that defendant is liable because Dr. Stulpin was its ostensible agent as he "was held out by said HMO on a List as being one of their Doctors and their approved Primary Physicians."

## IV. DISCUSSION

ERISA broadly preempts all state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a).[2] The provision preempts both state common law and statutory claims. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987). In general terms, a law "relates to" an employee benefit plan if it has a connection with or reference to such a plan, even if it was not designed to affect such plans or does so only indirectly. *Ingersoll–Rand Co.,* 498 U.S. at 138, 111 S.Ct. at 482; *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Such laws are preempted even when an aggrieved party will have no adequate remedy as a consequence. *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 11 (2d Cir.1992).

 However characterized, plaintiff's claims which arise from the manner in which defendant administered benefits or which are

2. Plaintiff acknowledges that the HMO plan in which Scott enrolled her decedent is an employ-

ee benefit plan within the meaning of ERISA.

premised on the type or extent of benefits defendant promised or provided are preempted. *See Kuhl v. Lincoln Nat. Health Plan,* 999 F.2d 298, 303 (8th Cir.1993) (claims for breach of contract and malpractice against plan administrator for delaying heart surgery for plaintiff's decedent arose from administration of benefits and thus preempted), *cert. denied,* — U.S. —, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Harms v. Cavenham Forest Industries, Inc.,* 984 F.2d 686, 694 (5th Cir.1993) (claim against plan sponsor for misrepresentation of available benefits preempted); *Corcoran v. United Healthcare, Inc.,* 965 F.2d 1321, 1332 (5th Cir.) (malpractice claim against plan administrator's utilization review agency for wrongful decision that hospitalization was not necessary alleged tort committed in connection with plan benefit determination and was preempted), *cert. denied,* — U.S. —, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992); *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 923 (3d Cir.1990) (claim against plan sponsor for misrepresentation regarding benefits preempted); *Elsesser v. Hospital of Philadelphia College,* 802 F.Supp. 1286, 1291–92 (E.D.Pa. 1992) (claims against plan administrator for wrongful refusal to pay for testing and for breach of contractual obligations and misrepresentation regarding qualifications of primary care physician and availability of specialized treatment preempted); *Kohn v. Delaware Valley HMO, Inc.,* 1991 WL 275609 at *4 (E.D.Pa. Dec. 20, 1991) (claims against HMO plan for failure to provide promised benefits and discouraging referrals to specialists preempted).

Accordingly, plaintiff's claims premised on misrepresentation, negligence and breach of contract will be dismissed.[3] Plaintiff's vicarious liability malpractice claim is another matter.

Pennsylvania recognizes a cause of action against hospitals for malpractice on an osten-

sible agency theory where a patient looks to the institution for care and it holds out a physician as its employee, that is by its conduct it leads the patient reasonably to believe that he is being treated by an employee of the institution. *See Capan v. Divine Providence Hospital,* 287 Pa.Super. 364, 368–70, 430 A.2d 647 (1980). This theory has been held applicable to an HMO. *See Boyd v. Albert Einstein Medical Center,* 377 Pa.Super. 609, 620–21, 547 A.2d 1229 (1988).

Courts are divided on the issue of whether ERISA preempts a medical malpractice claim against an HMO employee benefits plan party or administrator by a beneficiary under an ostensible agency theory. *See, e.g., Visconti v. U.S. Health Care,* 857 F.Supp. 1097, 1104–05 (E.D.Pa.1994) (vicarious liability claim against HMO administering benefits plan for malpractice of participating physician alleged to be ostensible agent is preempted); *Dukes v. U.S. Health Care Systems of Pennsylvania, Inc.,* 848 F.Supp. 39, 43 (E.D.Pa.1994) (same); *Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966, 973 (S.D.N.Y.1994) (same);[4] *Ricci v. Gooberman,* 840 F.Supp. 316, 317–18 (D.N.J.1993) (same); and, *Smith v. HMO Great Lakes,* 852 F.Supp. 669, 671–72 (N.D.Ill.1994) (vicarious liability claim against plan administrator for malpractice of participating physician not preempted); *Elsesser,* 802 F.Supp. at 1290 (same); *Stratton v. Bryant,* 1992 U.S.Dist. LEXIS 18050 at *7–8 (E.D.Pa. Nov. 18, 1992) (same); *Independence HMO, Inc. v. Smith,* 733 F.Supp. 983, 988 (E.D.Pa.1990) (same); *Kohn,* 1991 WL 275609 at *4 (same).

■ It is thus evident that this is a question on which reasonable and capable people may differ. The court concludes, however, that when a plan operator or administrator rather than just arranging and paying for treatment elects directly to provide medical

---

3. These claims for damages are not cognizable under ERISA.

4. Although the court in *Nealy* stated categorically that state law medical malpractice claims against plan administrators are preempted, in that case it was uncontested that defendant HMO did not directly provide medical services to plaintiff's decedent and there was no claim of ostensible

agency. *Nealy,* 844 F.Supp. at 968. The essence of the malpractice claim in *Nealy* was a negligent failure timely to facilitate or authorize certain services, properly characterized by the court as a preempted claim for wrongful administration by defendant of the benefit plan. *Nealy,* 844 F.Supp. at 973.

services or leads an enrollee reasonably to believe that it has, a vicarious liability claim for negligent treatment by a physician who is its agent or ostensible agent is not preempted.

The courts' holding that such claims are preempted do so for essentially the same several reasons.

In the cases cited above the courts all emphasize that the central feature of such a claim is the circumstances of medical treatment under an employee benefit plan, citing to *Altieri v. CIGNA Dental Health, Inc.*, 753 F.Supp. 61, 64 (D.Conn.1990). Plaintiff in *Altieri*, however, did not allege that his treating dentist was an ostensible agent of the defendant. Plaintiff in that case asserted claims for negligent failure to determine the dentist's competence and misrepresenting the quality of benefits offered, claims arising from the manner in which benefits were administered or provided which are preempted. If literally all claims involving "the circumstances of medical treatment" under a plan were preempted, however, a plan beneficiary could not even sue his treating participating physician for his malpractice.

The courts in *Visconti, Dukes* and *Ricci* also note that a determination of ostensible agency would require an examination of the plan and thus such a claim "relates to" an employee benefit plan. The courts in these cases also note that denying preemption in vicarious liability cases would result in higher costs for the plans. The courts in *Visconti* and *Dukes* further state that a determination of malpractice would require an examination of the plan to see whether the services provided measured up to those promised. Finally, the courts in *Ricci* and *Visconti* state that it would be anomalous to deny preemption for vicarious liability claims while allowing preemption of direct negligence claims.

The term "related to" is not to be taken literally but rather must be applied consistent with the policies underlying ERISA. *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir.1992). A law relates to an ERISA plan if it is designed to

affect such plans, singles them out for special treatment or predicates rights or obligations on the existence of such plans, impairs their ability to function simultaneously in different states or effectively restricts such plans with regard to their structure, administration, reporting requirements or choice of benefits. *United Wire v. Morristown Mem. Hosp.*, 995 F.2d 1179, 1192–93 (3d Cir.1993).

That a state law may increase the costs of operating a benefit plan does not result in preemption or such plans would enjoy "a charmed existence that never was contemplated by Congress." *Id.* at 1194. If cost were determinative, employee benefit plans would be exempt from liability for virtually all state law torts and they are not. *See Mackey v. Lanier Collections Agency & Service*, 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988); *Pohl*, 956 F.2d at 128.[5]

A determination that a treating physician committed malpractice does not require an examination of the plan to decide whether the service provided was that which was promised. What is required is evidence of what transpired between the patient and physician and an assessment of whether in providing admittedly covered treatment or giving professional advice the physician possessed and utilized the knowledge, skill and care usually had and exercised by physicians in his community or medical specialty. As noted, a claim that one was denied a promised benefit is preempted. A claim that one received a promised service from a provider who performed that service negligently is another matter.

That one may refer to the contents of a plan to adduce evidence that it held out a particular person as its employee or agent to help sustain a cause of action does not implicate the concerns underlying the ERISA preemption provision. A physician suing a plan administrator for services rendered to beneficiaries may have to reference the plan to prove that he was a participating physician, that he conformed with the required authori-

---

5. A plan entity easily can limit or avoid such costs by electing not directly to provide medical services and by simple language making clear that participating physicians are established practitioners with whom it has "contracted" to perform services for pre-established fees.

zation procedure or that the person who authorized performance of the services in question was duly designated to do so. A participating physician suing a plan administrator for libel for publication of false statements that he overcharged for certain services and performed unnecessary procedures may have to reference the plan to show what procedures were approved and what fee or fee range was authorized. Yet, such an action is not preempted. *See Mackey*, 486 U.S. at 833 n. 8, 108 S.Ct. at 2187 n. 8 (referencing *Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 341 S.E.2d 622 (1986)).

A state law vicarious liability claim for malpractice is based on common law tort and agency principles, and does not require a finding that a plan was wrongfully administered or that promised benefits were not provided. To present such a claim, a plaintiff whose employer enrolled him in an HMO would have to show nothing more than would a plaintiff who secured an HMO membership for himself. Unless we are going to create a two track system of justice in which ERISA plan entities operate in "a fully insulated legal world," such a claim should not be preempted. *See United Wire*, 995 F.2d at 1193 (quoting *Rebaldo v. Cuomo*, 749 F.2d 133 (2d Cir.1984)).[6]

To allow such claims would not create any more of an "anomalous situation" than results from the type of line drawing in which courts and legislatures frequently and necessarily engage.[7] Claims arising from allegedly wrongful benefit determinations are preempted whether the determination was made by a bureaucrat or by a utilization review physician and labeled as malpractice. A malpractice claim for injuries resulting from medical treatment could be maintained against any physician and entity employing

him or holding him out as an employee, including an HMO employee benefit plan that provided treatment directly through a physician it employed or through an ostensible agent.

Notably, the Court in *Corcoran* did not disclaim *Independence HMO* but distinguished it on the ground that the claim there was based on medical decisions made during treatment and not in connection with a benefit or cost containment determination. *Corcoran*, 965 F.2d at 1333 n. 15; *Lancaster v. Chandra*, 1994 WL 33962 at *4–5 (N.D.Ill. Feb. 4, 1994) (same—defendants conceding *Elsesser/Independence HMO* exception). *See also Butler v. Wu*, 853 F.Supp. 125, 130–31 (D.N.J.1994) (noting distinction between claim against HMO employee benefit plan for failure to supervise treatment provided by negligent participating physician which court held preempted and malpractice claim against an HMO plan that employs allegedly negligent doctor).

### V. *CONCLUSION*

Claims against an ERISA plan party premised on a failure to provide promised benefits or a misrepresentation of what benefits would be provided are preempted. A claim that participating primary care physicians were restricted or discouraged for economic reasons from referring beneficiaries to specialists or hospitals or from using the most state of the art diagnostic tests merely ascribes to a defendant a motive for failing to provide certain benefits and is preempted. A claim that an operator or administrator of a plan failed to use due care in selecting those with whom it contracted to perform services relates to the manner in which benefits are administered or provided and is preempted.

---

**6.** This concern is underscored by a recognition that increasingly HMOs and similar "entities which pay for health care, and those which provide it, begin to intertwine." *Geisinger Health Plan v. Com'r of Internal Revenue*, 30 F.3d 494, 501 (3d Cir.1994) (addressing whether HMO controlled by comprehensive direct health care provider is tax exempt under "integral part" doctrine). In crafting the preemption provision, it is doubtful that Congress envisioned HMOs operating hospitals, clinics or treatment centers

and directly providing professional health services by employees or agents free from tort liability even in the most blatant cases of malpractice where the unfortunate patients were enrolled by their employers.

**7.** It is more anomalous to impose liability on and require malpractice coverage for an HMO when it directly provides services to its individual subscribers but not when it provides such services to persons enrolled by their employers.

Accordingly, plaintiff's claims for negligent selection of a particular primary care physician, for misrepresentation of available benefits and for breach of a contractual obligation to provide certain benefits will be dismissed. To the extent plaintiff's "malpractice" claim is premised on Dr. Stulpin not testing, hospitalizing or referring decedent to a specialist because defendant disallowed or discouraged such services, the claim is preempted and also will be dismissed.

To the extent that plaintiff asserts a malpractice claim that defendant's ostensible agent was professionally negligent in treating or giving medical advice to decedent, the claim will not be dismissed.[8] The court does not suggest that Dr. Stulpin was defendant's ostensible agent merely because it "approved" him. This would amount to no more than a grant by a hospital of operating privileges to particular surgeons. The court also does not suggest that ostensible agency exists merely because an HMO plan requires a beneficiary to select from a list of physicians under contract with the HMO. *See Lancaster*, 1994 WL 33962 at *5–6 (referencing *Raglin v. HMO Illinois, Inc.*, 230 Ill. App.3d 642, 646, 172 Ill.Dec. 90, 595 N.E.2d 153 (1st Dist.1992)). The court merely concludes that it does not appear beyond doubt from the face of her complaint that plaintiff can prove no set of facts in support of a malpractice claim which could entitle her to relief.

Because the court lacks subject matter jurisdiction over such a vicarious liability medical malpractice claim by a Pennsylvania citizen against a Pennsylvania corporation, this action will be remanded to the Common Pleas Court of Delaware County.

---

8. To the extent that plaintiff's malpractice claim is premised on the retention or exercise by defendant of a right to control or direct the manner in which Dr. Stulpin performed services and not just what services were to be performed, she also may have a cognizable claim. *See, e.g., Sharkey v. Airco, Inc.*, 522 F.Supp. 646, 651 (E.D.Pa. 1981). There is a reference in the complaint to defendant's "right to control" Dr. Stulpin's conduct but there is no elaboration by plaintiff as to the nature of that conduct, and plaintiff relies exclusively on her ostensible agency theory in her brief in opposition to defendant's motion.