FLOYD JOHNSON, Plaintiff-Appellant, v. HILTON HOTEL CORPORA-
TION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—86—2604

Opinion filed September 8, 1989.—Rehearing denied December 5, 1989.

PINCHAM, J., dissenting.

Donald R. Brewer, of Dundee, for appellant.

Brydges, Riseborough, Morris, Franke & Miller, of Chicago, for appel-
lees.

JUSTICE COCCIA delivered the opinion of the court:

Plaintiff-appellant Floyd Johnson alleged in his unverified complaint that on March 2, 1983, he was injured while a patron of the Biloxi Hilton Hotel. Johnson stated that while arising from a chair located in the hotel lobby, his leg became entangled in an electrical lamp cord, which was located under the chair, causing him to trip and fall. In his effort to recoup money damages for his injuries, he brought this suit against the defendants, Hilton Hotel Corporation (Hilton Hotel), the Omicron Corporation, and the Biloxi Hilton Hotel. His complaint included three counts, each count dedicated to one of the three defendants. Johnson charged that each defendant individually owned, operated, and managed the hotel in question, and that the negligence of each was a proximate cause of his injuries.

The defendants Omicron and Biloxi Hilton thereafter filed special and limited appearances and motions seeking to quash service of summons for lack of personal jurisdiction. These motions were granted and Omicron and Biloxi Hilton were dismissed from the suit. Johnson has taken no appeal from those dismissals.

Hilton Hotel filed a motion to dismiss, pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619). The trial court granted Hilton Hotel's motion and dismissed Johnson's complaint on the ground that, as a matter of law, Hilton Hotel owed no duty to Johnson. It is from this order of dismissal that he appeals.

We affirm the trial court's order, and in support thereof state our reasons below.

Hilton Hotel, in support of its motion to dismiss Johnson's complaint, filed a copy of the licensing agreement relating to the Biloxi Hotel property in question, together with the affidavit of Lloyd S. Farwell, senior vice-president for Hilton Hotel and a senior vice-president for Hilton Inns, Inc. (Hilton Inns). It is noteworthy that this agreement was neither mentioned in Johnson's complaint nor attached thereto.

Farwell attested to the fact that he was familiar with the license agreement between the Hilton Inns and the Biloxi Hotel Properties, and that under this agreement the Biloxi Hotel Properties had the full and exclusive right and duty to operate the franchise. He further averred that at no time did either the Hilton Hotel or the Hilton Inns undertake to supervise, maintain, or provide janitorial services or maintenance services at the Biloxi Hilton.

In addition to the affidavit of Farwell, Hilton Hotel submitted the affidavit of John Yemelos, general partner of the Biloxi Hotel Proper-

ties and president of Omicron, who attested to the fact that the Biloxi Hilton was owned by Biloxi Hotel Properties Partnership, and that the Biloxi Hilton was managed by Omicron.

In further support of its motion to dismiss, Hilton Hotel tendered its verified answers to plaintiff's written interrogatories. These answers establish the following facts. Hilton Hotel did not review the Biloxi Hilton's operations. Hilton Hotel did not inspect the Biloxi Hilton to see whether it met the standards and reputation of the Hilton Hotel system. Hilton Hotel had no maintenance or engineering service agreements with the Biloxi Hilton from August 1973 to the time the interrogatories were answered; nor did it furnish architectural, interior design, and decorating services to the Biloxi Hilton during that time period. Hilton Hotel did not receive license fees under the licensing agreement between Hilton Inns, as licensor, and the licensee, Yemco Management Corporation, dated August 20, 1973. Finally, Hilton Hotel did not have correspondence with the Biloxi Hilton.

Along with Farwell's affidavit, Hilton Hotels submitted a copy of the license and franchise agreement, which controlled the rights and duties of the parties thereto and the properties in question. The agreement established, and the record reflects, the following. The licensor was *Hilton Inns, Inc.*, as distinguished from the Hilton Hotel Corporation. The licensee was YEMCO Management Corporation. The licensor (Hilton Inns) was a subsidiary of Hilton Hotel, a Delaware corporation. Hilton Hotel authorized the licensor, Hilton Inns, to grant licenses to selected, first-class, independently owned or leased hotel and inn properties for operation and to use the name Hilton as provided. The *licensor, Hilton Inns*, had specific duties under article 3 of the license and franchise agreement, which included reviewing the hotel's operations periodically; inspecting and having the right, from time to time, to inspect the hotel; defending the name "Hilton" against imitations or infringements by unauthorized hotels or inns; and at licensee's request, furnishing architectural, interior design, and decoration services. The *licensee, YEMCO Management Corporation*, had certain specific duties under article 5 of the aforementioned agreement, which included, *inter alia*, operating, furnishing, maintaining, and equipping the hotel and related facilities in a first-class manner; identifying itself as the owner and operator of the hotel under license from licensor in the use of the name and service mark "Hilton" and the stylized "H" service mark and in licensee's signs and advertising and promotional material; disclosing in all dealings with suppliers and persons, other than guests, that it was an independent entity, and that licensor had no liability for its debts, and to refrain from using the name "Hilton" or any name

similar thereto in or as part of its corporate or firm name; and operating the hotel directly by licensee. Finally, it was agreed that the license would be governed by the law of the State of Illinois.

Johnson failed to file any affidavits in opposition to those submitted by Hilton Hotel. Rather, he elected to stand on his unverified complaint, along with certain documents produced during discovery.

■ Nonetheless, Johnson now seeks to support his argument in search of reversal by stating that this court should pierce the corporate veil separating *Hilton Hotel* from the *Hilton Inns*. Johnson argues that a piercing of the corporate veil, which he asserts is necessary to hold Hilton Hotel liable for the actions of its subsidiary Hilton Inns, includes certain factual determinations which are for the trier of fact; thus, a section 2—619 dismissal is inappropriate. Johnson has, however, waived any claim that Hilton Hotel's liability can be predicated upon the theory of piercing the corporate veil, as he failed to raise this theory below in any form. Therefore, he cannot do so for the first time on appeal. See *Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 404-05, 442 N.E.2d 338, 342.

■ Johnson next argues that defendant Hilton Hotel's contention that it lacked an ownership interest, and had no duty to control the premises on which the plaintiff was injured, is clearly a question of fact to be determined by a jury; therefore, section 2—619 dismissal is inappropriate. Johnson, nevertheless, failed to demand trial by jury. Hilton Hotel did demand trial by jury, but Johnson concedes in his reply brief that he could not prevent Hilton Hotel from trying the case without a jury, given his failure to demand one. Accordingly, on the record before us, Johnson is not entitled to a jury's resolution on any of the issues in the case.

Be that as it may, it is settled that the Hilton Hotel's motion to dismiss raises a question of law which was properly submitted to the trial judge for resolution. The trial judge was in the best position to determine whether there were any factual questions to be resolved. He considered the motion to dismiss, which was based on the argument that Hilton Hotel had no direct or indirect ownership interest in the subject premises, or any right to control, police, inspect, supervise, or maintain them. Thus, Hilton Hotels asserted, it owed no duty whatsoever to Johnson.

■ It is fundamental that whether Hilton Hotel owed Johnson a duty is a question of law; furthermore, it is proper to raise this question in a section 2—619 motion to dismiss. See *Perkaus v. Chicago Catholic High School Athletic League* (1986), 140 Ill. App. 3d 127, 488 N.E.2d 623.

Johnson submits to us the case of *Drummond v. Hilton Hotel Corp.* (E.D. Pa. 1980), 501 F. Supp. 29, in support of his argument that, in our case, factual questions preclude dismissal. A close reading of *Drummond* leads us to conclude that it is inapposite. *Drummond* was a diversity case, in which Pennsylvania law was applied. The district court held that the defendant was not entitled to summary judgment, since there were material issues of fact concerning the existence of an agency relationship between the defendant and the subject premises' record owner. In this case, as set forth above, Hilton Hotel was not a party to the licensing agreement between Hilton Inns, as licensor, and the YEMCO organization, as licensee.

More to the point, plaintiff in *Drummond* resisted defendant's motion for summary judgment on the grounds of apparent agency. Johnson, in our case, raises that doctrine in support of his argument. We point out that he failed to plead apparent agency in his complaint, neglected to seek leave to amend to add this theory, and did not raise it below in any form. As a consequence, Johnson has waived any claim that Hilton Hotel's alleged liability may be predicated upon the theory of apparent agency. Thus, like the piercing of the corporate veil theory, he cannot now raise apparent agency for the first time on appeal. See *Miscevich*, 110 Ill. App. 3d at 404-05, 442 N.E.2d at 342.

■ Finally, regarding the licensing agreement, we note that there is no reference therein to Hilton Hotel as the licensor. Rather, the instrument is clear that the licensor is Hilton Inns and the licensee is YEMCO Management. Plaintiff did not name Hilton Inns as a defendant, and he did not plead vicarious liability in any of its forms.

For all of the stated reasons, we affirm the circuit court. The record reveals that Hilton Hotel had no direct or indirect ownership interest in the subject premises and no right to control them. Consequently, it owed Johnson no duty.

Affirmed.

LORENZ, J., concurs.

JUSTICE PINCHAM, dissenting:

I dissent. This appeal is by plaintiff Floyd Johnson from the dismissal of his complaint against the defendant, Hilton Hotel Corporation (Hilton Corp.). The dismissal of defendant Hilton Corp. was based on Hilton Corp.'s assertion that it did not own, control, manage or operate the defendant Biloxi Hilton Hotel in which plaintiff Johnson was injured. Johnson accurately argues that Hilton Corp. wanted and exer-

cised control over Biloxi Hilton but sought to avoid the attendant legal responsibilities and liabilities and that the trial court erred in granting defendant Hilton Corp.'s motion to dismiss.

Plaintiff Johnson's complaint was based on negligence against Biloxi Hilton Hotel, the Hilton Corp. and Omicron Corporation, defendants. Count I of Johnson's complaint alleged that *defendant Hilton Corp. "owned, operated and managed" the defendant, Biloxi Hilton Hotel. Count II alleged that defendant Omicron Corporation "owned, operated and managed" the defendant Biloxi Hilton Hotel.* (Emphasis added.) The Hilton Corp. was served with summons, and its attorney filed an appearance and a jury demand. Thereafter defendant Hilton Corp. responded to Johnson's complaint with a motion to dismiss, which incorporated the provisions of and had attached thereto the franchise agreement that was in effect between defendant Biloxi Hilton Hotel and defendant Hilton Hotel Corp. Hilton Corp.'s motion to dismiss alleged, *inter alia:*

> "2. That on March 2, 1983, the Biloxi Hilton Properties was a separate and distinct corporation from the Hilton Hotel Corporation. Attached hereto and incorporated herein is a copy of the Hilton Licensing Agreement documentation reflecting the grant of a license and franchise to Biloxi Hotel Properties.
>
> * * *
>
> 4. The Hilton Hotel Corporation has no direct or indirect ownership interest [*sic*][1] and therefore owes no duty to the plaintiff herein.
>
> 5. Furthermore, *the defendant, Hilton Hotel Corporation had neither the right, duty nor in fact did it undertake to control, police, inspect, supervise or maintain the premises located at the Biloxi Hilton Hotel Properties.*" (Emphasis added.)

Specific provisions of the franchise agreement referred to in defendant Hilton Corp.'s motion to dismiss and on which I rely in this dissenting opinion are hereafter set forth. I likewise hereafter set forth the specific pertinent provisions of the affidavit of Lloyd S. Farwell, senior vice-president of defendant Hilton Corp. and Hilton Inns, which were also submitted in support of Hilton Corp.'s motion to dismiss.

While I agree with the majority that plaintiff cannot now claim, for the first time on appeal, that Hilton Corp. is liable under a piercing of the corporate veil theory, in that it is elementary that arguments and theories never raised in the trial court may not be raised for the first time on appeal (*Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d

---

[1]The motion apparently intended to allege "in the Biloxi Hilton Properties."

18, 473 N.E.2d 588), I disagree with the majority and Hilton Corp.'s contention that Hilton Corp. lacked an ownership interest in and did not control or maintain the Biloxi Hilton Hotel premises in which plaintiff was injured. These were questions of fact properly determinable by a jury or by the trial judge as the trial fact finder. Therefore, in my judgment, the dismissal order under section 2—619 was improper.

The affidavit of Hilton Corp.'s senior vice-president, Lloyd Farwell, submitted in support of Hilton Corp.'s motion to dismiss, stated:

"2. In my position as Senior Vice President, Hilton Inns, Inc., I am familiar with the license arrangements between Hilton Inns, Inc., a subsidiary of Hilton Hotels Corporation, and the Biloxi Hotel Properties;

3. [T]hat pursuant to the Licensing Agreement, the Biloxi Hotel Properties has the full and exclusive right and duty to operate the franchise;

4. [T]hat at no time has either Hilton Hotels Corporation or Hilton Inns, Inc., undertaken to supervise, maintain or provide janitorial services or maintenance services at the Biloxi Hilton Hotel Properties." (Emphasis added.)

These assertions in the affidavit of Hilton Corp.'s senior vice-president Farwell, "that at no time has either Hilton Hotel Corporation or Hilton Inns, Inc., undertaken to supervise, maintain or provide janitorial services at the Biloxi Hilton Hotel properties," are diametrically contradicted by the provisions of the franchise agreement between the Biloxi Hilton Hotel, the Hilton Corp. and Hilton Inns, hereinafter set forth. The franchise agreement on which Hilton Corp. relies in its motion to dismiss to establish that Hilton Corp. did not "operate, maintain or control" Biloxi Hilton Hotel not only contradicts, but indeed the franchise agreement affirmatively indicates that Hilton Corp. did "operate, maintain or control" the Biloxi Hilton Hotel, as plaintiff Johnson alleged in his complaint.

The franchise agreement initially provides that the Hilton System is a subsidiary of the defendant Hilton Hotel Corp. and that the Hilton System is the licensor in the franchise agreement. Defendant Biloxi Hilton Hotel is the licensee in the franchise agreement. According to the first paragraph of the franchise agreement, the defendant Hilton Corp. and its subsidiaries expressly manage and control "a system of Hilton *** hotels and inns." It is provided in the franchise agreement:

"[H]ilton Hotel Corporation *** own, lease, operate and manage a system of Hilton *** hotels and inns ***."

Second, the franchise agreement provides that the defendant

Hilton Corp. controls the name and the name insignia of the defendant Biloxi Hilton Hotel, and clearly, intentionally and expressly so indicated such to the business and public world, for obvious business and publicity advantageous reasons to both defendants Hilton Corp. and Biloxi Hilton. Regarding Hilton Corp. controlling the Hilton name and the Hilton name insignia at the Biloxi Hilton, the franchise agreement provides:

> "Licensee [Biloxi Hilton] hereby acknowledges Licensor's [Hilton Corp.] and Hilton's exclusive rights to and interest in the System and to its present and future distinguishing characteristics, and Licensor's and Hilton's exclusive rights to such characteristics. These characteristics include the names 'Hilton Hotels,' \*\*\*, 'Hilton,' \*\*\* and 'Hilton Inn' \*\*\*. Licensee hereby acknowledges that *these \*\*\* characteristics have acquired a secondary meaning which indicates that the hotel [or] inn, \*\*\* is operated by or with approval of Hilton.*" (Emphasis added.)

Thus the franchise agreement expressly admits that the Hilton Hotel name and insignia *"indicate[ ]"* that the Biloxi Hilton *"is operated by"* Hilton Corp. Additionally, the franchise agreement requires the Hilton Corp. to "defend the name 'Hilton' against imitation or infringements by unauthorized hotel[s] or inns."

The franchise agreement also confers upon Hilton Corp. the right and duty to periodically review the defendant Biloxi Hilton's operation procedure and to consult Biloxi Hilton on its operation procedures or problems. The franchise agreement states that the Hilton Corp. *shall* "[r]eview the [Biloxi] Hotel's operations periodically during each operating year and consult with Licensee from time to time on operating problems concerning the [Biloxi] Hotel."

Another ingredient of the Hilton Corp.'s control of the Biloxi Hotel expressed in the franchise agreement is Hilton Corp.'s obligation and authority to inspect the Biloxi Hilton Hotel to preserve the Hilton system's standards. The franchise agreement provides that the Hilton Corp. *shall "inspect and have the right, from time to time to inspect the [Biloxi] Hotel so as to maintain the high standards and reputation of the [Hilton] System."* (Emphasis added.)

The franchise agreement also requires the Hilton Corp. to set up and issue an identification, advertising, accounting and operating manual to and for the Biloxi Hilton Hotel's guidance and performance. It is stated in the franchise agreement that the Hilton Corp. *shall* "issue \*\*\* an operating manual \*\*\* which shall set out Licensor's [Hilton Corp.'s] services and the policies, practices and standards of the [Hilton] System for [Biloxi] hotel and motel operation, identification,

advertising and accounting."

Hilton Corp. was obligated under the franchise agreement to furnish Biloxi Hotel "maintenance and engineering services" at the Biloxi Hotel's request.

The franchise agreement obligated Hilton Corp. at Biloxi Hotel's request to "use its best efforts to obtain insurance for the [Hilton Corp.] Hotel." Pursuant thereto, Hilton Corp. held insurance certificates in varying amounts up to $10 million on Biloxi Hotel properties and was the insured beneficiary in Biloxi Hotel properties insurance policies dating back to 1975 and up to the date of plaintiff's injuries.

It is apparent from the foregoing provisions and requirements of the franchise agreement that Hilton Corp. had extensive control and maintenance over Biloxi Hilton Hotel's operation which contradicted the contrary assertions of Hilton Corp.'s motion to dismiss and the affidavit of Hilton Corp.'s vice-president, Lloyd Farwell, submitted in support of Hilton's dismissal motion. Certainly these aforementioned provisions of the franchise agreement merited plaintiff Johnson an opportunity to further establish by evidence at trial the extent and specifics of Hilton Corp.'s control over the operation, management and maintenance of Biloxi Hilton. Thus, the trial court erred in granting Hilton Corp.'s motion for summary judgment on its asserted but contradicted grounds that it had no control over the operation, management and maintenance of the Biloxi Hilton. Hilton Corp. had the benefit, power and pride of control but now seeks to avoid payment of the price therefor.

In an analogous case, *Drummond v. Hilton Hotel Corp.* (E.D. Pa. 1980), 501 F. Supp. 29, plaintiff was injured as a result of a fall in the Hilton Inn. Plaintiff filed a complaint against Hilton Corp. to recover damages for the injury. In response, Hilton Corp. moved for summary judgment and alleged, as in the instant case, that at no time did it maintain, own, control, or operate the hotel premises in which plaintiff was injured, that the owner of the hotel was the Creative Development Co. (Creative), a wholly owned subsidiary of the Gebco Investment Corporation. In *Drummond,* as in the instant case, a franchise agreement existed between Hilton Corp. and Creative. Plaintiff Drummond resisted Hilton Corp.'s summary judgment motion, asserting, as does plaintiff Johnson herein, that Hilton Corp. held itself out in such a manner as to lead the general public, including hotel guests, to believe that in the public and hotel guests relations with Hilton Inns they were dealing with Hilton Corp. or a servant or employee of Hilton Corp. In *Drummond,* the United States District Court denied Hilton Corp.'s motion for summary judgment and held *"that whether Hilton [Corp.]*

*held itself out to the public as the owner or operator of the Hilton Inn is a proper issue of fact for determination by a jury."* (Emphasis added.) 501 F. Supp. at 32.

Similarly, in the case at bar, the issue of whether Hilton Corp. held itself out to the public as the owner or operator or had control of the Biloxi Hilton Hotel were issues of fact for determination by a jury or the trial judge as the trial fact finder. The determination of these issues may be initially discerned from various sections and subsections of the franchise agreement between Biloxi Hilton Hotel and the Hilton Corp. The franchise agreement, as previously set forth, specifically states "Hilton Hotel Corporation *** own, lease, operate and manage, a system of Hilton *** hotel[s] and inns," that Hilton Corp. has "exclusive rights to and interest in" the Biloxi Hilton Hotel and to such characteristics of the Hilton Corp. as the names "Hilton Hotels" and "Hilton," that "these characteristics have acquired a secondary meaning which indicates that the hotel *** is operated by or with approval of Hilton" and describes certain responsibilities of Hilton Corp. as licensor. These duties and rights in the franchise agreement state that Hilton Corp. has "the right *** to inspect the [Biloxi Hilton] Hotel so as to maintain the high standards and reputation of the [Hilton] system" and at Biloxi Hilton's request "use its [Hilton Corp.'s] best efforts to obtain insurance for [Biloxi Hilton] Hotel." In fact, as indicated by the record before us and as previously mentioned, Hilton Corp. did obtain insurance for Biloxi Hilton Hotel properties and is the certificate holder of the insurance policies as well as named as an additional insured. However, Hilton Corp. in its motion to dismiss conversely maintained that it did not have "the right *** to *** inspect *** the premises located at the Biloxi Hilton Hotel properties." Thus, there were presented material and genuine disputed questions of fact.

Whether Hilton Corp. had an interest in, controlled, managed or maintained the premises of the Biloxi Hilton Hotel were material questions of fact for determination at trial. Plaintiff Johnson was entitled to his day in court on this factual controversy. This factual controversy of Hilton Corp.'s control over Biloxi Hilton should not have been summarily determined as a matter of law by the trial court. The trial court's allowance of defendant Hilton Corp.'s section 2—619 motion to dismiss was therefore clearly erroneous. The summary judgment dismissal order should be reversed and the cause should be remanded to the trial court for further proceedings. Accordingly, I dissent.