A94A1979. SMITH et al. v. MAYTAG CORPORATION et al.

(455 SE2d 379)

ANDREWS, Judge.

Smith and Cook, sole shareholders and directors of TWS, Inc., and TWS, Inc. appeal from the trial court's grant of summary judgment to defendants Maytag Corporation, Amerivend Southeast Corporation, formerly known as The Richard Company, Inc. (The Richard Company), and Owens, a salesman for Amerivend.[1]

The summary judgment to Amerivend and Owens was awarded on the basis of res judicata, based on prior litigation initiated by Park Leasing Company against TWS, Inc. and Smith. In that suit, TWS, Inc. and Smith counterclaimed against Park Leasing and recovered on their counterclaims for violation of the Sale of Business Opportunities Act (SOBA). *Park Leasing Co. v. TWS, Inc.*, 206 Ga. App. 864 (426 SE2d 620) (1992).

The grounds urged in support of the motion for summary judgment by Maytag were numerous and the order granting summary judgment does not specify its legal basis. We have examined the pleadings and record and conclude that the only issue necessary for us to consider as to Maytag is that of agency, for without that, there is no linchpin for the liability of Maytag.

1. "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.] A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Maytag manufactures appliances, including commercial washers and dryers. As reflected in *Park*, supra, The Richard Company, now

---

[1] The brief of appellants is not in compliance with Rule 27 (a) (1) & (c) (3) (i) of this court. While some factual allegations are supported by record references, many crucial ones are not, making this court's review of claimed errors extremely difficult on the voluminous record before us. Further, some of the record references are incorrect and misleading.

Amerivend, is in the business of distributing Maytag equipment, although its products are not limited to Maytag products. The following paragraph is contained in the Commercial Distributorship Agreement between Maytag and The Richard Company: "DISTRIBUTOR IS NOT IN ANY RESPECT AN AGENT, REPRESENTATIVE OR EMPLOYEE OF COMPANY, IN FURTHERANCE OF THIS FACT, DISTRIBUTOR SHALL ACCEPT FULL RESPONSIBILITY FOR ANY REPRESENTATIONS MADE TO ITS CUSTOMERS, INCLUDING BUT NOT LIMITED TO THOSE DEALING WITH QUESTIONS OF PROFITABILITY, LOCATION, FACILITIES, EQUIPMENT AND SERVICE REQUIREMENT. FURTHER, DISTRIBUTOR AGREES TO INDEMNIFY AND HOLD COMPANY HARMLESS, . . ."

Maytag Financial Services Corporation (MFSC) is a wholly owned subsidiary of Maytag which is in the business of providing distributors selling Maytag products "with a means of leasing MFSC Related Products to their customers." As such, it entered into an agreement with Park Leasing Company whereby Park would provide administrative services for leases between MFSC and its lessees and would be authorized to use the name "Maytag Financial Services Corporation" in its leases. On March 15, 1989, MFSC (Park Leasing) and TWS, Inc. entered into an agreement whereby TWS would lease listed Maytag commercial laundry equipment for TWS' Laundromat in Savannah. Nine of the pieces of equipment were previously owned by Park Leasing and the other twenty-five pieces were purchased by The Richard Company from Maytag for the purpose of leasing them to TWS, Inc.

The equipment lease provided in paragraph 22: "Entire Agreement — This Lease contains the entire agreement between the parties; and no agreement, representation or inducement shall be effective to change, modify or terminate this Lease in whole or in part, unless in writing and signed by the parties. All prior conversations or writings between the parties hereto or their representatives are merged herein and extinguished."

When the laundromat was not successful, TWS, Inc. and Smith as guarantor were sued by Park Leasing Company for the remainder of the lease payments due on the equipment. TWS and Smith then counterclaimed, alleging numerous claims against Park Leasing. The judgment in TWS and Smith's favor on their counterclaim was affirmed by this court which concluded that all damages were in fact awarded under the SOBA claim. Id. This court upheld the jury's factual determination that The Richard Company was the agent of Park Leasing for purposes of the transactions with TWS and held Park Leasing responsible for representations made by Owens, The Richard Company salesman, which were alleged to be false and violative of the

SOBA.

Maytag supplied product information to its distributors, including a brochure concerning the "Maytag Equipped Just Like Home Laundry." Included with this material is an explanatory letter which states "[t]his information is presented to give you ideas on how to make YOUR laundry business become the type of business you want it to be. The Maytag Company is proud of our full line of commercial laundry products. We feel that Maytag commercial laundry products should be an important part of YOUR laundry business. . . . This booklet is an effort to highlight some other factors [in addition to brand of machines used] which you may wish to consider. Of course, we cannot list all of the factors you need to consider and therefore we encourage you to obtain competent advice before making YOUR decisions about YOUR commercial laundry. . . . In an effort to help you decide to fully equip YOUR laundry with Maytag commercial laundry products, we've introduced the Maytag-equipped(R) Just Like Home(TM) laundry co-op sign program. It's not a franchise. The choices are YOURS. Ask your Maytag commercial laundry distributor what you need to do in order to be eligible for the Maytag-equipped Just Like Home laundry co-op sign program and hang 'Maytag-equipped Just Like Home Laundry' signs in YOUR laundry. . . . The enclosed artist's conceptions and material samples are examples of how YOUR laundry can look. The enclosed list of manufacturers is furnished as a service to you if you would like to furnish and decorate your laundry as shown in the artist's conceptions."

In response to the affirmative statement of Maytag's corporate secretary that The Richard Company was not the agent of Maytag, as opposed to Park Leasing d/b/a Maytag Financial Services, Inc., appellants present their conclusions and assumptions based, among other things, on the product brochure.

" 'The bare assertion or denial of the existence of an agency relationship is a statement of fact when made by one of the purported parties to the relationship; but when made by an outsider, bare assertions or denials are merely conclusions of law. The affidavit denying the existence of agency must be received as evidence of a fact, which cannot be overcome by conclusionary affidavits [or testimony].' [Cits.]" *Thomas v. Schouten*, 210 Ga. App. 244, 246 (435 SE2d 746) (1993).

"Where the question of agency vel non rests upon a written document and inferences deduced therefrom, . . . the issue presented is a question of law for the trial court since construction of written contracts is exclusively for the judge. [Cits.] . . . Under Georgia law[,] '(t)he relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf.' OCGA § 10-6-1.

The historical test applied by Georgia courts has been 'whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract.' [Cits.]" *Mc-Mullan v. Ga. Girl Fashions*, 180 Ga. App. 228, 229-230 (2) (348 SE2d 748) (1986).

Even assuming, without deciding, that the Maytag/The Richard Company distributorship agreement created a franchise arrangement, the mere use by a franchisee of the franchisor's trademark does not create sufficient evidence to allow the question of apparent agency to survive Maytag's motion for summary judgment. *Texaco v. Youngbey*, 211 Ga. App. 789, 790 (440 SE2d 533) (1994); *McGuire v. Radisson Hotels Intl.*, 209 Ga. App. 740, 742 (1) (435 SE2d 51) (1993); *McMullan*, supra; *Wiggins v. Home Owners Warranty Council &c.*, 168 Ga. App. 777 (310 SE2d 554) (1983). Also, the record does not contain admissible evidence that Maytag Corporation, as opposed to a subsidiary or other company, committed affirmative acts indicating that Park Leasing was its agent so as to justify reliance by TWS or Cook and Smith. Compare *Nat. Carloading Corp. v. Security Van Lines*, 164 Ga. App. 850, 853 (5) (297 SE2d 740) (1982) and *Triple "C" Recreation Assn. v. Cash*, 124 Ga. App. 754, 756 (2) (186 SE2d 145) (1971). In light of the language contained in the distributorship agreement, the trial court's grant of summary judgment to Maytag was proper, because there was no showing made that Maytag Corporation exercised such control over Park Leasing or The Richard Company to make either corporation the agent of Maytag.

2. Appellants also allege error in the trial court's grant of the motion of The Richard Company and Owens on the basis of res judicata.

(a) "[The law of res judicata], also known as claim preclusion, requires a plaintiff to bring all his claims against a party (or its privies) arising out of a particular set of circumstances in one action; while [collateral estoppel], sometimes called issue preclusion, prevents relitigation of an issue already litigated by the parties (or their privies). In other words, 'under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. (Cits.)' *Parklane Hosiery Co. v. Shore*, 439 U. S. 322, 326, n. 5 (99 SC 645, 58 LE2d 552) (1979); see also *Block v. Woodbury*, 211 Ga. App. 184 (1) (438 SE2d 413) (1993)." *Sorrells Constr. Co. v. Chandler Armentrout &c.*, 214 Ga. App. 193, 194 (447 SE2d 101) (1994).

The issue presented here is whether a judgment against the prin-

cipal, Park Leasing Company, in the prior action, can provide the basis for the agent, The Richard Company, to assert claim preclusion when sued in a separate action. As held in *Park Leasing,* supra at 865, "there was sufficient evidence of The Richard Company's agency to withstand [Park Leasing's] motion for directed verdict. [Cit.] As The Richard Company's principal, [Park Leasing] would be bound by the representation [regarding the income to be derived from opening a laundry]. OCGA § 10-6-56."

For the purpose of *claim preclusion* " 'a servant is not in privity with the master so as to be able to claim the benefit of an adjudication in favor of the master.' . . . *Gilmer v. Porterfield,* 233 Ga. 671, 674 (2) (212 SE2d 842) (1975)." (Emphasis omitted.) *Sorrells Constr. Co.,* supra.

(b) *McNeal v. Paine, Webber &c.,* 249 Ga. 662 (2) (293 SE2d 331) (1982), distinguished *Gilmer,* supra, holding that an employee was in privity with his employer for purposes of determining whether *issue preclusion* was applicable. *Sorrells Constr. Co.,* supra. In *McNeal,* the employer obtained a favorable verdict after acknowledging that, if the employee was liable, it was liable. Therefore, the prior adjudication in favor of the employer necessarily determined that the employee was not liable and there were no defenses available to the employer that were not available to the employee. Therefore, the plaintiff was precluded from relitigating the issue of the employee's liability. *Block,* supra at 186 (1); *Brinson v. First American Bank,* 200 Ga. App. 552, 555 (4) (409 SE2d 50) (1991).

Here, the premise for the jury's determination that Park Leasing was liable on the SOBA claim was its responsibility for the acts of its agent, The Richard Company, and there were no defenses available to Park that were not available to The Richard Company for these acts.

However, the judgment entered was *in favor of TWS and against Park Leasing, the principal.* Compare *Hodo v. Basa,* 214 Ga. App. 895, 896 (1) (449 SE2d 523) (1994).

This situation is similar to *Nannis Terpening &c. v. Mark Smith Constr. Co.,* 171 Ga. App. 111 (318 SE2d 89) (1984). There, Mark Smith Construction Company was the general contractor on a baseball stadium being built by the DeKalb County Board of Education. The Board had hired Jordan to prepare the plans and specifications and he in turn hired Terpening to prepare the structural portion of the plans and specifications. Smith encountered numerous problems, resulting in his filing suit against Jordan for negligence in preparation of the plans. Jordan then filed a third-party action against Terpening. Prior to commencing that litigation, however, Smith had initiated arbitration with the Board, as provided for in the construction contract, claiming it was due additional monies for problems on the project. The Board counterclaimed for defective and incomplete construction.

The arbitration was completed, resulting in an award to Smith and an award to the Board on its counterclaim. The result was a net recovery by Smith. The arbitration was conducted under the premise that the Board, as principal, would be responsible for any problems in construction caused by Jordan, the Board's agent. The confirmed arbitration award was paid by the Board and Jordan and Terpening sought summary judgment in Smith's litigation against them on the basis of OCGA § 9-2-4. This court reversed the trial court's denial of summary judgment to the agents because the arbitration award had resolved the Board's vicarious liability for the acts of its agents on the project.

Therefore, since the judgment entered against Park Leasing has been paid, The Richard Company and Owens are entitled to rely upon that satisfied judgment entered against their principal insofar as it is a final adjudication regarding damages incurred by TWS as a result of misrepresentations made by The Richard Company and its employee Owens under the SOBA.

A review of the record here reflects that the same categories and in many instances the exact same amount of damages were claimed by TWS in the suit against Park as are now being claimed against The Richard Company and Owens. TWS was paid $34,118 in actual damages, trebled pursuant to OCGA § 10-1-399, plus punitive damages and attorney fees.

The trial court was correct in concluding that, as to the amount of TWS' and Smith's damages claimed against The Richard Company, the prior judgment against Park was conclusive and binding against TWS and Smith. *Thompson v. Hardy Chevrolet &c.*, 211 Ga. App. 521, 522 (1) (439 SE2d 689) (1993); *Green v. Thompson*, 208 Ga. App. 609, 610 (1) (431 SE2d 390) (1993).

3. The addition of "personal" claims by Cook, one of two shareholders in TWS, Inc., is of no avail. Here, any claims which he has are solely as a result of his status as a stockholder in TWS, Inc. Such claims are those of the corporation and assertable by it unless the stockholder claims fraud on the part of the corporation, which is not present here. *Smyly v. Smith*, 216 Ga. 529 (1) (118 SE2d 188) (1961); *Short v. McKinney*, 111 Ga. App. 557, 560 (2) (142 SE2d 398) (1965); see *Mickel v. Pickett*, 241 Ga. 528, 537 (8) (247 SE2d 82) (1978).

4. There is no need to address the remaining enumerations of error.

*Judgment affirmed. Johnson, J., concurs. Beasley, C. J., concurs in judgment only.*

DECIDED MARCH 16, 1995.

*Stanley G. Jackson,* for appellants.

*McAlpin & Henson, Kirk M. McAlpin, Jr., Pursley, Howell, Lowery & Meeks, R. Harold Meeks, Jr.,* for appellees.