REGINALD O'BANNER, Plaintiff-Appellant, v. McDONALD'S CORPORATION, Defendant-Appellee (Unknown Owners, Defendants).

First District (6th Division)   No. 1—93—1758

Opinion filed May 12, 1995.—Rehearing denied July 5, 1995.

RAKOWSKI, J., dissenting.

Donald A. Kurasch, Ltd., of Chicago (Donald A. Kurasch and Jessica B. Tucker, of counsel), for appellant.

Law Office of John C. Kiely, of Chicago (John C. Kiely and Dennis M. Glynn, of counsel), for appellee.

JUSTICE ZWICK delivered the opinion of the court:

This is an appeal from the trial court's grant of summary judgment in favor of defendant, McDonald's Corporation (hereinafter McDonald's Corporation or the franchisor). Plaintiff, Reginald O'Banner, alleged in a single-count complaint that he slipped and fell in a McDonald's restaurant located at 29 East 87th Street in Chicago and that McDonald's Corporation was vicariously liable for the negligence of the restaurant's owners who operated the restaurant through a franchise agreement. The owners of the restaurant (the franchisees) have never been served and are not parties to this appeal. We are asked to determine whether a franchisor can be liable for the negligence of its franchisees under either an agency or apparent agency theory of liability notwithstanding the existence of agreements between the franchisor and franchisee which expressly disavows an agency relationship.

Plaintiff's complaint alleged that he was injured in the franchisee's bathroom on February 1, 1990, after he slipped on what he believed to be ice or water. He filed his complaint alleging negligence on January 9, 1992. He claimed that McDonald's Corporation owned or leased, maintained, operated and controlled the franchisee's premises and, as a result of the franchisee's negligence, caused plaintiff's injuries. The trial judge granted McDonald's Corporation's summary judgment motion on March 18, 1993, after a previous judge denied summary judgment on August 20, 1992, and again on November 16, 1992.

■ Initially, there is some confusion as to the authority upon which plaintiff brings this appeal. On March 18, 1993, the trial court entered an order granting summary judgment in favor of McDonald's Corporation and denied plaintiff's subsequent motion to reconsider on April 23, 1993. These motions ended the litigation and were final and appealable orders pursuant to Supreme Court Rules 301 and 303. (134 Ill. 2d Rules 301, 303.) In both orders, however, the trial court, for reasons not explained in the record, made Supreme Court Rule 304(a) findings (134 Ill. 2d R. 304(a)). While the plaintiff has stated in his brief that this appeal is brought pursuant to Supreme Court Rule 304(a), we conclude that this appeal is proper only under Supreme Court Rules 301 and 303 (134 Ill. 2d Rules 310, 303). Plaintiff referenced these rules in his notice of appeal. We proceed accordingly.

Plaintiff claims that the trial court improperly granted summary judgment because there is sufficient evidence in the record to indicate that the relationship between McDonald's Corporation and its franchisees was such that the franchisees were McDonald's Corporation's actual agents. At the very least, plaintiff claims, there is a genuine issue of fact as to whether the franchisees were McDonald's Corporation's apparent agents.

In Illinois, summary judgment is governed by the provisions of section 2—1005 of the Code of Civil Procedure. (735 ILCS 5/2—1005 (West 1992).) Summary judgment is recognized to be a drastic remedy which is properly granted only where the movant's right to it is clear and free from doubt. (*Vicorp Restaurants v. Corinco Insulating Co.* (1991), 222 Ill. App. 3d 518, 584 N.E.2d 229.) The purpose of the summary judgment procedure is to determine whether there are any genuine issues of material facts between the parties. (*Vallejo v. Mercado* (1991), 220 Ill. App. 3d 1, 580 N.E.2d 655.) Summary judgment should be granted only if the pleading, depositions, admissions and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

(*Dash Messenger Service, Inc. v. Hartford Insurance Co.* (1991), 221 Ill. App. 3d 1007, 582 N.E. 2d 1257.) Review in the appellate court of a grant of summary judgment is *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102, 607 N.E.2d 1204.

■ The doctrine of *respondeat superior* allows an injured party to hold a principal vicariously liable for the conduct of his or her agent. (*Moy v. County of Cook* (1994), 159 Ill. 2d 519, 523, 640 N.E.2d 926.) The issue whether one is an agent or an independent contractor is generally a question of fact, unless the relationship is so clear as to be undisputed. (*Gasbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 43, 406 N.E.2d 544.) Whether an actual agency has in fact been created is determined by the relations of the parties as they exist under their agreements or acts, with the question being ultimately one of intention. 3 Am. Jur. 2d *Agency* §21 (1986).[1]

■ The record in this case establishes that the franchisees who owned and operated the restaurant located at 29 East 87th Street in Chicago were not McDonald's Corporation's actual agents. An agency relationship is a consensual one between two legal entities whereby: (1) the principal has the right to control the conduct of the agent, and (2) the agent has the power to affect the legal relations of the principal. (*State Security Insurance Co. v. Frank B. Hall & Co.* (1994), 258 Ill. App. 3d 588, 595, 630 N.E.2d 940.) The legal relationships between the defendants in this case are delineated by the written agreements which exist between them. Their relationship is that of lessor/lessee, licensor/licensee and franchisor/franchisee, but not principal/agent. While plaintiff has alleged otherwise, the affidavits and supporting documents contained in the record establish that McDonald's Corporation was not the owner or operator of the subject restaurant. The operator's lease, the license agreement and the franchise agreement for the restaurant which were in place at the time of plaintiff's accident clearly and undisputedly establish the

---

[1]In both *Salisbury v. Chapman Realty* (1984), 124 Ill. App. 3d 1057, 465 N.E.2d 127, and *Slates v. International House of Pancakes, Inc.* (1980), 90 Ill. App. 3d 716, 413 N.E.2d 457, the court stated that a franchisor may exercise such a degree of control over a franchisee so as to create an agency relationship, "at least insofar as this relationship affects a stranger to the franchise agreement." (*Salisbury*, 124 Ill. App. 3d at 1061; *Slates*, 90 Ill. App. 3d at 726.) In order to avoid semantical confusion, however, we believe a franchise agreement's effect on third parties is best considered under an apparent agency theory, as opposed to an actual agency analysis. See also *Greil v. Travelodge International, Inc.* (1989), 186 Ill. App. 3d 1061, 541 N.E.2d 1288 (applying California law).

lack of an actual agency relationship between McDonald's and its franchisees. Both the license agreement and operator's lease specifically and unequivocally state that the owners of the restaurant are *not* given authority to act as an agent for McDonald's Corporation and that the owners of the restaurant alone would be liable for any injuries occurring on the premises. There are no facts in the record which would indicate that this agreement was not followed, despite the extensive obligations placed upon the restaurant's operations by and in favor of McDonald's Corporation through its various agreements with the franchisees.

■ In contrast, the question of whether the franchisees were McDonald's apparent agents is not nearly so clear. An apparent agent is a person who, whether authorized or not, reasonably appears to third persons to be authorized to act as an agent. (*Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.* (1985), 138 Ill. App. 3d 574, 485 N.E.2d 1281.) The doctrine of apparent agency is based on the doctrine of equitable estoppel. (*Northern Trust Co. v. St. Francis Hospital* (1988), 168 Ill. App. 3d 270, 522 N.E.2d 699.) An apparent principal that places an apparent agent in a situation where that "agent" may be presumed to have authority to act is estopped as against a third party from denying the authority. (*Crawford Savings & Loan Association v. Dvorak* (1976), 40 Ill. App. 3d 288, 292-93, 352 N.E.2d 261.) The elements of apparent agency are most often set out in Illinois as being: (1) the principal's consent to or knowing acquiescence in the agent's exercise of authority, (2) the third party's knowledge of the facts and good-faith belief that the agent possessed authority, and (3) the third party's detrimental reliance on the agent's authority. *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 390, 577 N.E.2d 1344; *Northern Trust Co.*, 168 Ill. App. 3d at 278.

■ The three elements listed above are not easily applied to the tort situation such as the one presented by this case. They appear to have evolved from contract cases. (See *Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 524, 622 N.E.2d 788 ("It is true that the doctrine of apparent authority is more commonly applied in contract cases").) Recently, however, the supreme court set out the elements of apparent agency which govern the tort situation which arises when a hospital patient is harmed by the tortious conduct of the hospital's independent contractor. (*Gilbert*, 156 Ill. 2d at 525.) In order to hold the hospital vicariously liable for the contractor's actions, the court determined the plaintiff must show: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was

an employee or agent of the hospital; (2) where it is the acts of the alleged apparent agent that create the appearance of authority, that the hospital had knowledge of and acquiesced in those actions; and (3) that the plaintiff acted in reliance upon the conduct of the hospital or its alleged agent, consistent with ordinary care and prudence. *Gilbert*, 156 Ill. 2d at 525.

■ We see no reason to limit the apparent agency theory of vicarious liability as set out in *Gilbert* to a hospital setting. Just as patients naturally depend upon their chosen hospital to supervise and take responsibility for the conduct of those who work within the facility, it is logical to conclude that many members of the public have come to believe that franchisors such as McDonald's Corporation are ultimately responsible not only for the quality of the food, but also for the condition of the premises in which it is served. McDonald's Corporation's extensive and visible reach into every aspect of its franchisees' businesses makes such a belief natural. The license agreement included in the record illustrates this fact. Under its terms, McDonald's Corporation has undertaken a substantial effort to assure that it alone controls how the public perceives its franchised restaurants.

McDonald's Corporation's "system" is described in its license agreements as being "comprehensive" in scope and offering the public a "uniform" atmosphere. Only designated food and beverages may be served at franchised restaurants. Franchisees are required to use prescribed equipment, building layouts and designs. McDonald's Corporation dictates the level of quality, service and cleanliness throughout the system. All restaurant employees are required to wear uniforms designated by McDonald's Corporation. McDonald's Corporation also dictates management, advertising and personnel policies and additionally runs "Hamburger University," a training facility where its franchisees are required to train their managers. Presumably the employees responsible for maintaining the bathroom facilities where plaintiff was injured wore "McDonald's uniforms" and were required to follow McDonald's prescribed standards of "quality, service and cleanliness."

We find the degree of control exercised by the McDonald's Corporation over its franchisees, including the control exercised over the way in which the franchisees' business is promoted and advertised, creates the potential for members of the public to be misled as to the entity responsible for maintaining the restaurant facilities. The record indicates that McDonald's Corporation is the entity responsible for the relentless stream of commercials which permeate the media, promoting McDonald's restaurants as providing a safe,

clean and wholesome atmosphere. It is a question of fact as to whether this type of conduct could lead a person such as the plaintiff to enter the premises in reliance upon McDonald's reputation for quality and upon a belief that he was, in fact, dealing with an agent of the McDonald's Corporation.

Because we find there to be a genuine question of fact raised as to whether the plaintiff perceived the restaurant in which he slipped and injured himself as being operated by McDonald's Corporation or its agents, we reverse the circuit court's granting of summary judgment and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

McNAMARA, P.J., concurs.

JUSTICE RAKOWSKI, dissenting:

In reversing a proper grant of summary judgment, the majority has manufactured a cause of action that was never pleaded nor supported by the record. In doing so, the majority ignores controlling case law and instead relies upon a single case, *Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 622 N.E.2d 788, which is legally and factually inapposite.

Plaintiff's complaint contains a single count alleging in pertinent part that McDonald's Corporation, along with other unknown owners, owned, leased, operated, maintained, and controlled the premises where plaintiff was injured, and that it "was the duty of the defendants to exercise reasonable care and diligence to keep and maintain said premises in a reasonably safe condition." Nowhere in the complaint is there any allegation of agency, actual or apparent. Plaintiff neither amended the complaint nor added the "unknown parties" to the action.

McDonald's Corporation moved for summary judgment and in support filed an affidavit which stated:

"3) McDonald's Corporation does not own the business specified above.

4) McDonald's Corporation does not operate the business specified above.

5) McDonald's Corporation does not participate in the management of the business specified above.

6) McDonald's Corporation does not file a tax return for or on behalf of the business specified above.

7) McDonald's Corporation does not, nor does it have the right

to, hire, discharge or discipline employees of the business specified above.

\*\*\*

10) McDonald's Corporation does not, nor did it have the right to, control the day-by-day activities necessary to the business operations of the restaurant specified above.

11) At the time of the alleged incident, the restaurant business specified above was owned and operated by John/Sheri Enterprises, Inc. pursuant to the terms of a franchise agreement dated August 9, 1982."

McDonald's Corporation also filed copies of the operator's lease, the license agreement, and the franchise agreement.

Plaintiff's response to the summary judgment motion does not deny any of these facts. Plaintiff's affidavit simply contains the following conclusionary language:

"5. Upon information and belief, the executed license agreement referred to in Defendant's Motion contains language which establishes that Defendant, MCDONALD CORPORATION, maintained control in the operation of the franchise and over the daily procedures and business at 29 East 87th Street in Chicago."

This was the state of the record when the trial judge entered summary judgment. I repeat, the complaint did not contain any allegations of agency, nor was any evidence of agency proffered by the plaintiff. The sole issue framed by the parties was whether, after reviewing the documents, a question of fact existed as to whether McDonald's Corporation operated, managed, or controlled the subject premises.

A portion of the opinion, with which I agree, states McDonald's Corporation "was not the owner or the operator of the subject restaurant." (273 Ill. App. 3d at 592.) Usually, this determination would end the case. However, here the majority goes on to discuss the doctrine of apparent agency and, relying on *Gilbert*, concludes that a question of fact existed and summary judgment was error. I respectfully submit that the majority should never have addressed the issue of apparent agency because (1) it was not pleaded; (2) the record is devoid of any evidence to support an apparent agency theory; (3) *Gilbert* is both factually and legally inapposite; and (4) ample authority exists which is contrary to the majority holding.

When a party fails to raise a theory in any form in the trial court, he cannot raise it for the first time on appeal. (*Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 404-05, 442 N.E.2d 338.) In *Saladino v. Team Chevrolet, Inc.* (1993), 242 Ill. App. 3d 735, 740, 611 N.E.2d 583, the court held:

"[P]laintiffs did not allege apparent authority in their pleadings,

nor did they raise this theory at the trial level. The theory upon which a case is tried in the lower court cannot be changed on review. [Citations.] Accordingly, this issue is waived for the purposes of this appeal."

Strikingly similar to the case *sub judice* is *Johnson v. Hilton Hotel Corp.* (1989), 190 Ill. App. 3d 197, 546 N.E.2d 617, where plaintiff alleged he was injured while a patron in the Biloxi Hilton Hotel and that Hilton owned, operated, and controlled the subject premises. The trial court entered summary judgment in favor of Hilton, finding that Hilton had no direct or indirect ownership interest in the premises, or any right to control, police, inspect, supervise, or maintain them. On appeal, in response to plaintiff's argument of apparent agency, the court held:

> "We point out that he failed to plead apparent agency in his complaint, neglected to seek leave to amend to add this theory, and did not raise it below in any form. As a consequence, Johnson has waived any claim that Hilton Hotel's alleged liability may be predicated upon the theory of apparent agency." *Johnson*, 190 Ill. App. 3d at 201.

It is axiomatic that the purpose of pleading is to frame the issues. Although the standard may be relaxed (see *Gilbert*, 156 Ill. 2d at 527 (plaintiff did not allege apparent agency, but did allege agency, and the record contained ample evidence to support a theory of apparent agency)), it is counterproductive to allow a plaintiff to identify a specific theory (*i.e.*, that McDonald's Corporation owned, managed, operated, and controlled the restaurant), marshall evidence in support thereof, proceed to summary judgment, and then on appeal, without ever seeking leave to amend, argue a distinct, separate theory (*i.e.*, apparent agency).

Assuming *arguendo* that plaintiff did properly plead apparent agency, there is no authority to support such a theory on the record of this case. The majority relies solely on *Gilbert*, a case never argued by either party in its appellate brief or at oral argument. The reason, I submit, is that *Gilbert* does not apply to the facts in this case. In *Gilbert*, unlike the case *sub judice*, the record contained ample evidence that the hospital held the emergency room physician out to be its agent. The hospital never advised the decedent patient that emergency room physicians were independent contractors rather than hospital employees. Moreover, a consent form prepared by the hospital and signed by the decedent stated in pertinent part:

> "The undersigned has been informed of the emergency treatment considered necessary for the patient whose name appears above *and that the treatment and procedures will be performed by physi-*

*cians and employees of the hospital.*" (Emphasis added.) (*Gilbert,* 156 Ill. 2d at 516.)

Based on this evidence, the *Gilbert* court concluded that a fact question existed to preclude summary judgment.

Not only is *Gilbert* inapposite, but there is ample Illinois authority on the precise issue of a franchisor's tort liability for the actions of its franchisee. (See *Coty v. U.S. Slicing Machine Co.* (1978), 58 Ill. App. 3d 237, 373 N.E.2d 1371; *Slates v. International House of Pancakes, Inc.* (1980), 90 Ill. App. 3d 716, 413 N.E.2d 457; *Thomson v. McDonald's, Inc.* (1989), 180 Ill. App. 3d 984, 536 N.E.2d 760; *Salisbury v. Chapman Realty* (1984), 124 Ill. App. 3d 1057, 465 N.E.2d 127; *Yassin v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 502 N.E.2d 315; *Greil v. Travelodge International, Inc.* (1989), 186 Ill. App. 3d 1061, 541 N.E.2d 1288; *Raglin v. HMO Illinois, Inc.* (1992), 230 Ill. App. 3d 642, 595 N.E.2d 153.) Of these cases, only *Greil* found an agency relationship existed between a franchisor and its franchisee. However, in doing so, the *Greil* court applied California law, as required by the franchise agreement, rather than Illinois law. "California courts have found both types of agency [ostensible and actual] to exist in the franchise context." (*Greil,* 186 Ill. App. 3d at 1068.) Plaintiff does not cite, nor can I find, any Illinois authority to support his position.

Other jurisdictions have also addressed the application of the doctrine of apparent authority in a franchisee/franchisor context. See *Mobil Oil Corp. v. Bransford* (Fla. 1995), 648 So. 2d 119; *Myszkowski v. Penn Stroud Hotel, Inc.* (1993), 430 Pa. Super. 315, 634 A.2d 622; *Chevron U.S.A., Inc. v. Lesch* (1990), 319 Md. 25, 570 A.2d 840; *Wood v. Shell Oil Co.* (Ala. 1986), 495 So. 2d 1034; *Watkins v. Mobil Oil Corp.* (1986), 291 S.C. 62, 352 S.E.2d 284; *Smith v. Maytag Corp.* (Ga. App. 1995), No. A94A1979, 1995 WL 111397; *McGuire v. Radisson Hotels International, Inc.* (1993), 209 Ga. App. 740, 435 S.E.2d 51; *Puente v. Frisch's Restaurants, Inc.* (Ohio App. 1986), No. L—86—134, 1986 WL 14372; *Dalia v. Electronic Realty Associates, Inc.* (Fla. Dist. Ct. App. 1994), 629 So. 2d 1075; *Hayman v. Ramada Inn, Inc.* (1987), 86 N.C. App. 274, 357 S.E.2d 394 (all held against the application of apparent authority in franchisee/franchisor context).

To be sure, contrary authority does exist and the following cases have applied the doctrine of apparent authority to a franchisee/franchisor relationship. (See *Shaffer v. Maier* (1994), 68 Ohio 416, 627 N.E.2d 986; *Watson v. Howard Johnson Franchise Systems, Inc.* (1995), 216 Ga. App. 237, 453 S.E.2d 758; *Parker v. Domino's Pizza, Inc.* (Fla. Dist. Ct. App. 1993), 629 So. 2d 1026; *Gizzi v. Texaco* (3d Cir. 1971), 437 F.2d 308; *Crinckley v. Holiday Inns, Inc.* (4th Cir. 1988),

844 F.2d 156.) In all of these cases, however, the records contain ample evidence of holding out and justifiable reliance.

In the case *sub judice*, the complaint contains no allegations, nor does the record contain any evidence, as to how McDonald's Corporation held out its franchisees to be its agent. More importantly, there is no evidence whatsoever as to if, how, or why the plaintiff relied to its detriment.

For the foregoing reasons, I would affirm the decision of the circuit court.